**LAYTON CITY, Plaintiff and Respondent,**

v.

**Billy E. NOON, Defendant and Appellant.**

**No. 860248–CA.**

Court of Appeals of Utah.

May 4, 1987.

J. Franklin Allred, Margo L. James, Salt Lake City, for defendant and appellant.

Steve Garside, Layton City Atty., Layton, for plaintiff and respondent.

Before JACKSON, BILLINGS and GARFF, JJ.

## OPINION

JACKSON, Judge:

A circuit court jury convicted defendant Billy E. Noon of driving while under the influence of alcohol ("DUI"), a violation of Layton Municipal Code § 41–6–44. The verdict was upheld on appeal to the Second District Court. Noon appeals to this Court, claiming that the police had no probable cause to arrest him for DUI and that he was denied effective assistance of counsel at trial. We affirm the conviction.

On the evening of November 30, 1985, Noon drove into a Circle K fast enough to catch the attention of the lone store clerk, Wilhelm. Wilhelm watched Noon park the car, get out and enter the store. According to Wilhelm, Noon stumbled, his speech was slurred when they talked about the open trunk on his car, and he smelled of alcohol. Wilhelm told Noon he had left his headlights on. When Noon returned to the car

to turn off his lights, Wilhelm called the police.

A few minutes later, Officers Robnett and Cline reached the store parking lot in response to the dispatcher's coded message that an intoxicated person was about to become an intoxicated driver. There was only one car there, an empty 1964 light blue Ford Falcon. The officers saw no one in the well lit parking lot. Robnett went into the store and up to Wilhelm, who was standing behind the counter. Wilhelm told Robnett that Noon, the only customer in the store at that time, was the one who had prompted Wilhelm's call to the police, that he drove up in the car in the lot, and that there was no one else in the vehicle.

Robnett then approached Noon, who smelled heavily of alcohol. To assure himself that the smell was coming from Noon's breath, and not just from Noon's clothing or person, Robnett had Noon blow into the officer's hand. Robnett believed Noon was intoxicated; he staggered and slurred his speech. Robnett asked Noon to step outside the store in order to take field sobriety tests. Noon complied with this request, but could not complete an accurate recitation of the alphabet, A through Z. At Robnett's request, Noon attempted to stand with both legs together and then raise either foot six inches off the ground and hold it there. Noon fell backward almost as soon as he lifted his foot; the officer caught him in mid-fall. Noon then claimed that he could not be arrested for DUI because he had not been driving the car. A friend of his brother had been driving, Noon said, but had "taken off" when the police pulled up.

At the police station, Noon again insisted he hadn't been driving, but agreed to take a breath test. The intoxilyzer machine was cleared, as required by standard procedure, and the officer removed a mouthpiece from a sealed bag, hooked it to the tube from the intoxilyzer, and put it up to Noon's mouth for him to blow into. Noon stuck the mouthpiece in his mouth, but tried to exhale around the mouthpiece, so that no air entered the tube. This was obvious to Officer Robnett because air in the tube normally makes a sound and a light on the intoxilyzer illuminates when sufficient air is entering the tube to constitute a good sample. Robnett warned Noon that the air was not going into the tube, preventing a proper sample. At that point, Noon told Robnett he would not continue with the breath test process without a lawyer present. Despite repeated warnings from Robnett that refusal could lead to license revocation, Noon continued to decline the breath test. The testing process was halted, and Noon was booked into jail.

Noon's first contention on appeal is that Officer Robnett did not have probable cause to arrest him for driving under the influence of alcohol. Utah Code Ann. § 41–6–44 (1986), which is identical to Layton Municipal Code § 41–6–44, provides, in pertinent parts:

(1) It is unlawful and punishable as provided in this section for any person with a blood alcohol content of .08% or greater by weight, or who is under the influence of alcohol or any drug or the combined influence of alcohol and any drug to a degree which renders the person incapable of safely driving a vehicle, to drive or be in actual physical control of a vehicle within this state....

. . . .

(8) A peace officer may, without a warrant, arrest a person for a violation of this section when the officer has probable cause to believe the violation has occurred, although not in his presence, and if the officer has probable cause to believe that the violation was committed by the person.

■ In determining whether Officer Robnett had probable cause to arrest Noon for driving under the influence of alcohol, we must ask

whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense.

*State v. Hatcher*, 27 Utah 2d 318, 495 P.2d 1259, 1260 (1972) (footnote omitted). *See State v. Whittenback*, 621 P.2d 103, 106

(Utah 1980). Applying this standard to Officer Robnett's knowledge at the time of Noon's arrest, we are convinced that Robnett reasonably believed Noon had committed the offense of driving under the influence of alcohol.

Robnett testified that he saw only one vehicle in the store parking lot as he and Officer Cline approached and that he saw no other person in the area of the lot or in the store who might have been the fleeing phantom driver proposed by Noon. Robnett verified with the store clerk that Noon, the only person in the store at that time besides the officers and the store clerk, was the person about whom the clerk had called the police and that Noon was the one who had driven up in the car parked outside. In addition, Robnett could smell alcohol on Noon's breath. He heard Noon's slurred speech and watched Noon walk from the store in an unsteady manner. He heard Noon repeat several letters as he said the alphabet, and he caught Noon before he fell to the ground while attempting the other field sobriety test.

The mere fact that Robnett had not seen Noon actually driving the car is not fatal to the existence of probable cause, since Section 41–6–44(8) specifically provides that the violation need not occur in the presence of the officer. Given what Robnett knew, he reasonably believed: (1) that Noon was under the influence of alcohol to a degree that rendered him incapable of driving a vehicle, and (2) that Noon had been intoxicated while driving the parked vehicle.

Noon's second contention on appeal is that he was denied a fair trial, as guaranteed by the sixth and fourteenth amendments to the United States Constitution and by article I, section 12 of the Utah Constitution, because of the ineffective assistance of trial counsel. Noon claims prejudice from trial counsel's failure to object to: (1) the prosecutor's leading questions during direct examination of Wilhelm; (2) Wilhelm's explanation of why he called the police to report Noon; (3) Officer Robnett's testimony of what Wilhelm said to Robnett before Robnett approached Noon in the store; (4) Robnett's reading from his report

form about what transpired at the police station during the aborted intoxilyzer test; and (5) Robnett's testimony that Noon refused to submit to the breath test.

In order to challenge a conviction on the basis of ineffective assistance of counsel,

> it is the defendant's burden to show: (1) that his counsel rendered a deficient performance in some demonstrable manner, and (2) that the outcome of the trial would probably have been different but for counsel's error.

*State v. Geary,* 707 P.2d 645, 646 (Utah 1985) (citations omitted). We examine each of the claimed errors by trial counsel to see if they demonstrate a deficient performance under the first part of the *Geary* test.

██ Noon first claims to have been prejudiced by the failure of trial counsel to object to leading questions the prosecutor asked Wilhelm. A reading of the trial transcript shows that there were five questions in the eleven pages cited to us by appellant's brief that might be considered leading, but they do not concern the crux of Wilhelm's testimony. Nor did the questions suggest an answer that could not have been elicited by proper questioning. Indeed, one of the portions of the transcript Noon directed us to consists of several pages of defense counsel's repeated objections to the prosecutor's questions to Wilhelm about whether Noon acted differently during the field sobriety tests than he had while in the store. Defense counsel succeeded in getting the prosecutor to withdraw the questions.

██ Noon next contends that counsel should have objected to Wilhelm's narrative about why he called the police. He claims the narrative was irrelevant and prejudicial. That "narrative" consists of one sentence that was not responsive to the prosecutor's question:

Q. Okay. Now, before he went out to shut his trunk and turn out his lights, did you ask him any questions about the vehicle or about himself or—

A. Well, at first I wasn't going to call the police and then I was concerned for his safety and the safety of people—he might kill a family or something. I

asked him if that was his car and he said, "Yeah." And, before he went out to—I told him his lights were on and his trunk was open when I asked him if that was his car. That's when he went out to shut his lights off and try to shut his trunk.

Q. Okay, then. When he exited you called the police.

A. Right.

Q. And why did you do that?

A. Well, you know, I didn't want it on my conscience that, you know, that he could have—

At this point, defense counsel interrupted and objected to the question based on relevancy. In other words, although not with lightning speed, he did exactly what Noon claims he failed to do. We cannot fault defense counsel for being unable to read Wilhelm's mind and prevent his first irrelevant comment about Noon possibly killing someone.

■ Third, Noon claims it was inadmissible hearsay for Robnett to testify about what Wilhelm told him in the store before the officer approached Noon. We disagree. The testimony was not hearsay because it was not offered to prove the truth of the matter asserted by Wilhelm; rather, it was offered to explain what information Robnett had that led him to believe Noon had been driving while intoxicated. Utah R.Evid. 801(c). *See State v. Collier*, 736 P.2d 231, 234 (Utah 1987).

■ Noon next argues that defense counsel should have objected to the lack of foundation for Robnett to read from a DUI form. The officer read several questions and admonitions printed on the form that he had read to Noon as he attempted to give him a breath test. He also read from the form the notations he had made, at the time, of Noon's response to each question or admonition. While it is true that a foundation was necessary to show Robnett's need to refresh his recollection, Utah R.Evid. 612, the prosecutor could easily have laid such a foundation. Any objection by trial counsel would, therefore, have been useless and could have led the jury to think that defense counsel was unnecessarily interrupting the officer.

■ The last alleged error is counsel's failure to object to Robnett's testimony about Noon's refusal to submit properly to a breath test. Robnett testified that he repeatedly warned Noon of the potential license revocation for failure to take the breath test, but that Noon repeatedly declined the offer. Then the prosecutor asked:

Q. So he refused to submit then to the breath test, I mean intoxilyzer?

A. Yes, sir.

Noon's appellate counsel argues that this constituted an opinion or legal conclusion for which no foundation was laid, as required by either Utah R.Evid. 701 or 702, and for which no foundation was possible. However, Officer Robnett never said, "In my opinion, Noon refused the test," or anything that would suggest he was stating an opinion. He did not "characterize" Noon's actions as being a refusal; he merely recited his observations of Noon's words and actions while he tried to administer the breath test. The jury was free to evaluate this testimony and reach its own conclusions about the meaning of Noon's behavior and statements that he would not continue without his lawyer present. This admissible testimony from Robnett did not become an opinion simply through the prosecutor's use of the words "refuse" or "refusal," terms that are also used in the statute implying a driver's consent to be chemically tested for intoxication, Utah Code Ann. § 41–6–44.10 (1986). Moreover, that statute specifically makes admissible evidence of Noon's refusal to submit to the chemical test:

(8) If a person under arrest refuses to submit to a chemical test or tests under the provisions of this section, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of alcohol or any drug or combination of alcohol and any drug.

Utah Code Ann. § 41–6–44.10(8) (1986).

■ We recognize that a criminal defendant is constitutionally entitled to de-

fense counsel with reasonably competent levels of skill, judgment and diligence. *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.1980) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). However, this court will not second-guess trial counsel's legitimate use of judgment. *Codianna v. Morris,* 660 P.2d 1101, 1110 (Utah 1983); *State v. McNicol,* 554 P.2d 203, 205 (Utah 1976).

We are not convinced that these decisions of Noon's trial counsel demonstrate anything more than his permissible stylistic or strategic choices. His tactics do not come close to showing deficient representation that might have resulted in a constitutional deprivation. Noon has, therefore, failed to establish the first requirement of the standard set out in *Geary.*

From our review of the record, we are satisfied that trial counsel provided a competent defense, and that Noon had the fair trial to which he was entitled.

The conviction is affirmed.

BILLINGS and GARFF, JJ., concur.