**STATE of Utah, Plaintiff and Respondent,**

**v.**

**James Ace MOREHOUSE, Defendant and Appellant.**

**No. 860193–CA.**

Court of Appeals of Utah.

Jan. 12, 1988.

Rehearing Denied Feb. 1, 1988.

Joan C. Watt (Argued) Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., David B. Thompson (Argued), Asst. Atty. Gen., for plaintiff and respondent.

OPINION

Before JACKSON, BENCH and DAVIDSON, JJ.

---

DAVIDSON, Judge:

Defendant appeals his conviction of aggravated arson on the grounds of insufficiency of evidence and insufficiency of counsel. We affirm.

On November 1, 1985, defendant was the lessee and operator of a gas service station located at 400 E. 1300 S. in Salt Lake City. At approximately 8:00 p.m. firemen were called to extinguish a fire in the ceiling over the office in that building. The fire was extinguished with little real damage although the ceiling was pulled down to put out any hot spots. The preliminary cause of the fire was stated to be electrical since a light fixture was located in the area where the fire began. No investigator was called and upon the arrival of defendant the fire department crew left the station in his care.

At approximately 11:00 p.m. the fire department was again called to the scene to fight another fire, this one in the office and service bay. The commander on the scene, Lt. Mauerman, saw that this fire had multiple origins and rather than being suppressed by water, was being spread as though the fire was being pushed around by the spray. He immediately suspected arson and called an investigator. The investigator, Captain Memmot, arrived on the scene very quickly. He began an investigation and concluded that the fire was arson caused. In the course of the investigation that night, he took two rolls of slides and picked up numerous items of evidence for preservation and analysis. Captain Memmot was assisted by a police arson investigator, Detective Clegg, who questioned several witnesses including defendant. The following day and again several days later Captain Memmot returned to the station where he did further investigation and took additional slides.

Several months after the fires, defendant was charged with the crime of aggravated arson. He was tried before a jury, convicted and sentenced to prison. This appeal followed.

Defendant first claims the evidence was insufficient to show arson. The standard of review to be applied to a criminal jury verdict is well established. The Utah Supreme Court in the case of *State v. Underwood*, 737 P.2d 995 (Utah 1987), outlined the standard.

In reviewing a defendant's conviction, we do not substitute our judgment for that of the jury. *State v. Booker*, 709 P.2d 342, 345 (Utah 1985). It is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses. *Id.*

. . . .

When there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the requisite elements of the crime can be reasonably made, our inquiry stops and we sustain the verdict.

737 P.2d at 996.

■ The jury was shown evidence which strongly supported the conclusion that both fires were intentionally set. Lieutenant Mauerman testified that the second fire exhibited characteristics of being caused by a flammable liquid. Also concerning the second fire, Captain Memmot testified of multiple points of origin, of pour patterns, burn patterns and damage characteristic of a flammable liquid being poured and then ignited. He testified that evidence taken from the fire scene showed the presence of gasoline. He ruled out the possibility of an electrical fire testifying to his examination of the wiring, junction box and circuit breaker box. He exhibited numerous slides to illustrate his findings and to show why he made his conclusions. While concluding that both fires were intentionally caused, he found no connection between the two.

The jury had before it adequate evidence to conclude that the fires were intentionally caused. We will not disturb their findings.

■ The defendant next claims the evidence was insufficient to show that he was responsible for either fire. As is the case in most arson investigations, the evidence was largely circumstantial. However, in this case the jury heard from a neighbor who stated she knew defendant and had done business with him. She testified that at 11:00 p.m. on the night of the fires she watched defendant enter the station through a hole in the door left from the

first fire. Immediately after he entered, the witness heard the sound of breaking glass and saw flames shoot up in the office area. Defendant then came back out and entered his automobile.

The jury heard testimony from other witnesses that supported the eyewitness and controverted defendant's version of the facts as given through the testimony of his wife. Testimony was also given as to a possible financial motive for the defendant to start the fires. We cannot say, from the evidence presented to the jury, that the evidence "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Booker,* 709 P.2d at 345 (quoting *State v. Petree,* 659 P.2d 443, 444 (Utah 1983)).

We next turn to the argument that defendant was denied the effective assistance of counsel. In the recent case of *State v. Archuleta,* 747 P.2d 1019 (Utah 1987), the Supreme Court re-emphasized the requirements necessary to prove ineffective assistance of counsel as follows:

> In order to succeed on a claim of ineffective assistance of counsel, an appellant must show
>
> > (first) that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> *Strickland v. Washington,* 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674], *reh'g denied,* 467 U.S. 1267 [104 S.Ct. 3562, 82 L.Ed.2d 864] (1984).
>
> Before this Court will consider whether specific conduct falls below the required standard of objective reasonableness, the

person arguing ineffective assistance must show that the conduct prejudiced his case. *Id.* at 697 [104 S.Ct. at 2069]; *see also State v. Frame,* 723 P.2d 401, 405 (Utah 1986). In order to prove prejudice to his case, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694 [104 S.Ct. at 2068].

747 P.2d at 1023.

■ Defendant raises two specific omissions which he claims are prejudicial. First is the failure of counsel to object to evidence seized in warrantless searches. No objection was raised to any of the evidence and defense counsel made use of it during cross examination of prosecution witnesses. Later the defense called an expert witness to testify that the fires were electrically caused. This expert based his analysis and conclusion on the same evidence. Had the jury chosen to believe him, the element of intentional burning could not have been proven and defendant could not have been found guilty. We find no prejudice in the failure to object to the evidence. This clearly falls within legitimate trial tactics of defense counsel. *State v. Pursifell,* 746 P.2d 270, (Utah App.1987); *Layton City v. Noon,* 736 P.2d 1035, 1040 (Utah App.1987); *Codianna v. Morris,* 660 P.2d 1101, 1110 (Utah 1983).

■ Defendant next argues that because defense counsel did not understand a rule of evidence, he was prevented from testifying in his own behalf. Defendant claims he could explain his whereabouts prior to the first fire. The focus of the prosecution, however, was on the second fire. During the trial, several witnesses testified as to movements, whereabouts and statements made by defendant.[1] Had defendant testi-

---

1. Several statements made by defendant were admitted through other witnesses. His wife was also allowed to testify. Several conflicts were obvious between defendant's statements and the testimony of his wife. At one point defendant claimed the fire was started by someone from a mysterious car. This was supported by testimony from his wife. In a later statement defendant told the investigator that the occupants of that car were not "suspects" in the fire.

fied he would have been subject to cross examination on all this evidence. Inconsistencies in statements would have been further developed. The jury would have been told, at the very least, that he had previously been convicted of a felony.[2] It is difficult to see how the defendant's failure to testify leads to a reasonable probability that the result would have been different. Again, counsel's decision falls within the wide latitude of legitimate trial tactics.

We find no merit in defendant's arguments raised on appeal. Accordingly the judgment and sentence are affirmed.

BENCH, J., concurs.

JACKSON, Judge (dissenting):

I respectfully dissent.

On appeal, Morehouse claims he was denied his right, under the sixth amendment to the United States Constitution, to effective assistance of counsel at trial because of each of the following two instances of alleged incompetency by his retained counsel: (1) counsel kept Morehouse from testifying in his own behalf based on counsel's erroneous belief that the rules of evidence would allow the defendant to be impeached on cross-examination by the introduction of all his previous criminal convictions; and (2) counsel failed, both before and during trial, to seek exclusion of evidence seized in warrantless searches of the gas station after the night of the fires, as well as the expert opinion testimony based thereon. I do not address the second alleged error by counsel, although it adds fuel to the issue of prejudice, because the first is constitutionally dispositive.

In order to succeed in his claim, Morehouse must demonstrate that his trial counsel's specific act or omission fell below an objective standard of professional reasonableness and that the deficiencies in representation resulted in prejudice to him.

State v. Archuleta, 747 P.2d 1019, 1023 (1987); State v. Frame, 723 P.2d 401, 405 (Utah 1986) (adopting the two part standard for ineffective assistance of counsel enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

## QUALITY OF REPRESENTATION

With regard to the first claimed error by appellant's counsel, there is no question that Morehouse has met the first part of the Strickland test by showing a specific action that falls outside the wide range of professionally competent assistance. See State v. Frame, 723 P.2d at 405. At their first consultation, Morehouse told the attorney that he wanted to testify in his own behalf. He had alibi witnesses[1] for the entire evening of November 1, except for the thirty minutes just prior to the first fire report. He had been in a public place with friends for an extended period of time and was home with his wife within one-half hour, where another witness phoned him. Only he could tell the jury where he was and what he was doing at the time the initial fire started. Only he could explain what he observed and what he did inside the building prior to the second fire. Before entering, he and his wife had been sitting in their car in front of the gas station for a long period, in full view of everyone, including his neighbor-customer (later key prosecution witness) across the street. Only he could share with the jury a first-person account of his claims of innocence.

But his attorney deprived him of his constitutional right to testify. Counsel erroneously advised him not to testify because he could be cross-examined concerning all his numerous prior convictions, thereby keeping Morehouse off the witness stand and prohibiting his testimony.

---

2. Defendant has a long criminal record involving convictions for several felonies and two prior incarcerations in the Utah State Prison. Pursuant to Utah R.Evid. 609 evidence of prior criminal convictions may be elicited from the witness to attack his credibility. By not testifying defendant prevented any mention of his past criminal activity from reaching the jury.

1. Although the alibi defense was pursued through Morehouse's other witnesses (without objection from the prosecution), trial counsel apparently did not file and serve a written notice of intention to claim alibi, as required by Utah Code Ann. § 77–14–2 (1982).

After Morehouse's conviction and sentencing on April 14, 1986, counsel filed a motion for a new trial. At the hearing on that motion, counsel admitted his legal error in misunderstanding the applicable rule of evidence, Utah R.Evid. 609, and its effect on Morehouse. He testified that he did not call Morehouse to the stand solely because of the defendant's prior convictions, and that he had advised Morehouse that, if he took the stand, he would be required "to respond not only as to the fact of his prior convictions, but as to the number and nature," making it impossible "to make Morehouse presentable to the jury." Counsel claimed that he subsequently realized his error in not filing a pretrial motion to restrict the use of Morehouse's convictions for impeachment purposes when he read the opinion of the Utah Supreme Court in *State v. Banner,* 717 P.2d 1325 (Utah 1985), issued the day of Morehouse's sentencing.

Counsel would not proceed on those adverse admissions as an appeal tactic if they were not true. He considered his erroneous advice to be of serious proportions and prejudicial. He was the only person, other than Morehouse, who knew the full story. However, my colleagues, without the benefit of any greater knowledge, deem the matter harmless. I do not.

Appellant's attorney failed to know and understand Utah R.Evid. 609, even though it was adopted on April 14, 1983, three years before Morehouse's trial, and became effective September 1, 1983. It is true that the rule, when adopted, conflicted with the last sentence of Utah Code Ann. § 78–24–9 (1987), allowing a witness to be cross-examined on any previous felony conviction. But, even though *Banner* was the first Utah case to explicitly declare that portion of the statute superseded by Utah R.Evid. 609, the Preliminary Note to the 1983 Utah Rules of Evidence declared that any existing statute inconsistent with the rules was impliedly repealed with their adoption and that the new rules provided a fresh starting place for the law of evidence in this state. The pertinent subsections of Rule 609 state:

**(a) General rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

**(b) Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Morehouse's prior convictions were:

1964 Burglary

1972 Possession of a weapon by a restricted person

1973 Burglary and theft

1976 Possession of a controlled substance

1982 Driving under the influence

Under subsection (a)(1) of Rule 609, the DUI conviction was not admissible because not punishable by more than one year's imprisonment. The 1964 and 1972 convictions, being more than ten years old, were inadmissible under subsection (b) unless the court determined that their probative value outweighed their prejudicial effect, an unlikely result given the nature of the

convictions and the fact that they occurred 22 and 14 years, respectively, before Morehouse's trial for aggravated arson. The 1973 conviction was potentially admissible under subsection (a), because Morehouse had been reimprisoned for that offense and not released until 1978, less than ten years before this trial.[2] *See* Utah R.Evid. 609(b). But both that conviction and the 1976 possession conviction were admisssible via Rule 609(a)(1) only after the trial court determined that their probative value outweighed their prejudicial effect.[3] *State v. Gentry*, 747 P.2d 1032, 1033 (Utah, 1987).

In short, reasonably competent defense counsel would have sought to restrict the prosecutor's use of Morehouse's convictions at a pre-trial hearing conducted in accordance with Rule 609, at which it would have been the prosecution's burden to persuade the court that their probative value outweighed their prejudicial effect. *State v. Banner*, 717 P.2d at 1334. Furthermore, reasonably competent defense counsel would have known the content of Utah R.Evid. 609 and its applicability to appellant's circumstances and would have been able to give Morehouse correct legal advice about the rule's impact on his right to testify in his own defense.

## PREJUDICE TO DEFENDANT

Having determined that trial counsel's representation of Morehouse was demonstrably incompetent, the next question is whether that deficiency was prejudicial to appellant.[4] *State v. Frame*, 723 P.2d at

---

**2.** Contrary to the view expressed by the trial judge at the hearing on the motion for new trial, appellant's 1973 conviction for burglary was not admissible under subsection (a)(2) as involving "dishonesty or false statement," i.e., without the determination required by subsection (a)(1). In order to interpret that phrase in our rule, Utah courts must look to the federal decisions interpreting Fed.Rule Evid. 609(a)(2), *State v. Gray*, 717 P.2d 1313, 1317 (Utah 1986), recognizing that the federal courts are not in full agreement on what constitutes "dishonesty or false statement" under their rule. *See* Annotation, *Impeachment of Witness by Evidence of Prior Conviction*, 39 A.L.R.Fed. 570, 596 (1976). I find more persuasive and better-reasoned those decisions holding that burglary and theft not arising from fraudulent conduct are not crimes involving "dishonesty or false statement" within the meaning of Rule 609(a)(2).

> By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

*United States v. Smith*, 551 F.2d 348, 362 (D.C. Cir.1976), (quoting H.R.Conf.Rep. No. 93–1597, 93d Cong., 2d Sess. 9, *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 7098, 7103). The rule's intent was to limit introduction of prior convictions for impeachment purposes only to those crimes that bear directly on a witness's propensity not to tell the truth. Otherwise, one could argue that any crime could be introduced to impeach. *See United States v. Millings*, 535 F.2d 121, 123 (D.C.Cir.1976). Burglary and ordinary theft are not crimes of dishonesty or false statement within the meaning of Rule 609(a)(2) because they do not involve the credi-

bility-deteriorating quality contemplated in the rule. *See United States v. Glenn*, 667 F.2d 1269 (9th Cir.1982); *United States v. Entrekin*, 624 F.2d 597 (5th Cir.1980), *cert. denied*, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981); *United States v. Seamster*, 568 F.2d 188 (10th Cir. 1978).

**3.** The factors that should be considered by the trial court in balancing probative value against prejudicial effect for purposes of Utah R.Evid. 609 are enumerated in *State v. Banner*, 717 P.2d at 1334.

**4.** I note that at least one federal district court has declined to apply this second part of the *Strickland* test where trial counsel's incompetency kept a criminal defendant from testifying in his own behalf.

> This Court considers a defendant's right to testify in a criminal proceeding against him so basic to a fair trial that its infraction can never be treated as harmless error, which is in essence the inquiry required to be made by the second, prejudice to the defendant, prong of *Strickland*.

*United States v. Butts*, 630 F.Supp. 1145, 1148 (D.Me.1986). Although, as here, the issue as presented to the court was the denial of a sixth amendment right to effective assistance of counsel, the *Butts* court instead recognized a due process right of the defendant to testify in his own behalf because counsel's actions had "affected the very fairness of the trial process itself." *Id.* Defendant's motion for a new trial was granted, with the court holding that, where ineffective assistance of counsel deprives a defendant of his right to testify, prejudice is sufficiently proven from that deprivation. However sympathetic I may be to this analysis, this court is constrained to apply both parts of the *Strickland* test to the case before us, in light of the

405. In order to substantiate a claim of ineffective assistance of counsel, appellant must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the reliability of the verdict. *Id.; State v. Lairby,* 699 P.2d 1187, 1204–06 (Utah 1984). *See Strickland,* 466 U.S. at 491, 104 S.Ct. at 2066.

The evidence in this case, although legally sufficient to support a conviction, was meager. There was no affirmative evidence that Morehouse caused the first fire; moreover, his behavior the remainder of the night appears inconsistent with that of the second fire's instigator. The purported motive—that Morehouse wanted to burn himself out of his business lease—is highly suspect.

Testimony by Morehouse to explain the half-hour gap in his alibi was crucial to his case, especially since the prosecutor's argument focused the jury on the gap. As previously stated, only he could explain to the jury why he was sitting in a car at the gas station, in plain view of the neighbors and all others on the busy street, until minutes before the second alarm was called in. Only he could tell what went on inside the building when he entered it.

Morehouse's trial counsel considered that testimony consequential enough to raise a "reasonable probability" of a different outcome. Otherwise, trial counsel would not have filed the highly embarrassing post-trial motion for a new trial.

The jury was deprived of the benefit of both hearing and observing this critical witness. It was not for his attorney to muzzle him in this manner. *Wright v. Estelle,* 572 F.2d 1071, 1078 (5th Cir.1978) (Godbold, J., dissenting), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). "Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance." *United States v. Walker,* 772 F.2d 1172, 1179 (5th Cir.1985). Plainly, Morehouse's testimony had exculpatory potential and would have enhanced his defense. *Id.* (quoting *United States v. Larson,* 596 F.2d 759, 779 (8th Cir.1979)).

After a careful review of the testimony and evidence presented at trial, I am compelled to conclude that there is a reasonable probability that the jury verdict would have been different if counsel had competently understood the rules of evidence and not kept Morehouse from testifying. Therefore, defendant's conviction ought to be reversed and the case remanded for a new trial.

conclusion in *State v. Banner,* 717 P.2d at 1335, that the trial court's error in not excluding use of defendant's convictions for impeachment purposes—which kept defendant from testifying in his own behalf—"does not reach constitutional proportion."