**STATE of Utah, Plaintiff and Respondent,**

v.

**Gregory Raymond WIGHT, Defendant and Appellant.**

**No. 870558–CA.**

Court of Appeals of Utah.

Dec. 1, 1988.

Randall Gaither (argued), Salt Lake City, for defendant and appellant.

David L. Wilkinson, State Atty. Gen., Melvin C. Wilson, Davis County Atty., J. Mark Andrus, Brian Namba (argued), Deputy Davis County Attys., Farmington, for plaintiff and respondent.

Before GARFF, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

Gregory R. Wight appeals his jury conviction of automobile homicide under Utah Code Ann. § 76–5–207(1)(a) (1985). Wight asserts the trial court erred in: 1) admitting expert testimony into evidence without adequate foundation; 2) failing to order a new trial based on ineffective assistance of counsel; 3) failing to declare a mistrial due to juror bias; 4) admitting Wight's blood sample and blood test results into evidence; and 5) denying Wight's motion to exclude his prior robbery conviction. No objections were raised at the trial court on the issues of juror bias or admissibility of the blood sample and test results.

At about 1:00 a.m. on November 17, 1985, Wight was driving southbound on Redwood Road when his vehicle collided with a vehicle traveling northbound. Reid Nielsen, driver of the other vehicle, died in the accident. Wight was taken to a hospital where Utah Highway Patrol Trooper Steven Bytheway observed that Wight was unconscious and detected the odor of alcohol on his breath. Bytheway arrested Wight and directed a certified technician, Kathy Burns, to draw Wight's blood. Burns drew the blood at about 3:30 a.m., took the blood home and stored it in her refrigerator until November 21, 1985, when she took it to the state laboratory for analysis.

Wight was charged with automobile homicide and tried by a jury on June 12 and 13, 1986. Prior to trial, Wight filed a motion in limine seeking to exclude evidence of his 1977 aggravated robbery conviction. The court denied the motion.

At trial, after the jury was impaneled and the prosecution made its opening statement, the court asked the jurors if anyone knew Nielsen, the deceased. One juror stated that she knew his wife as a former neighbor and through the L.D.S. Church. When the court asked the juror if she could be fair and impartial, the juror stated that she could. Defense counsel discussed the juror's possible bias with defendant and did not raise an objection to proceeding. Defense counsel informed the jury in his opening statement that Wight had been convicted of aggravated robbery in 1977.

At trial, Wight testified he had consumed at least ten beers the night of the accident, most of it between midnight and 1:00 a.m. He also stated that he was not intoxicated, but was very tired on the night of the accident. Wight recalled that just prior to the collision he was traveling at about 53 miles per hour and barely missed one car which was traveling in the opposite direction. Almost immediately after the near collision, Wight again fell asleep at the wheel and woke up just as he saw Nielsen's headlights. Wight also testified he had been convicted of aggravated robbery, but did not elaborate further. Wight was not questioned about the robbery conviction during cross-examination.

Two Utah Highway Patrol troopers testified that Wight's vehicle was traveling about 71 miles per hour just prior to the accident. Further, Bruce Beck, the state toxicologist who analyzed Wight's blood sample, testified that the blood sample contained a blood alcohol content of .20%.

The jury convicted Wight of automobile homicide, a third degree felony. On October 9, Wight, through a new attorney, filed a motion for a new trial, claiming that his trial attorney did not effectively represent him. After hearing, the motion was denied.

I.

EXPERT TESTIMONY

We first determine whether the trial court erred in admitting the testimony of the two highway patrol officers into evidence. Experts are permitted to testify as to their opinion if scientific, technical or other specialized knowledge will assist the trier of fact. Utah R.Evid. 702. The expert must be qualified by knowledge, skill, experience, training, or education. *Id.* Trial courts are granted considerable discretion in determining whether an expert is qualified to give an opinion. *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250,

253 (Utah 1985). The expert's opinion may be based on facts or data the expert perceived, or facts or data made known to the expert at or before the hearing. Utah R.Evid. 703.

In the present case, Officer Erickson testified that he had approximately 120 hours of accident investigation training at the time of the accident and had investigated about 75 accidents. He also stated that he visited the accident scene, took measurements and estimated that Wight's vehicle was traveling 71 miles per hour prior to impact. Officer Dahle, who had similar training and experience but who had not visited the scene of the accident or made his own measurements, testified that based on Officer Erickson's measurements, Wight's vehicle was traveling 71 miles per hour prior to the accident. Both officers were adequately qualified under Utah R.Evid. 702 and, in accordance with Utah R.Evid. 703, testified as to facts either known to them or made known to them. Based on the foregoing, we find no merit in Wight's contention that the trial court abused its discretion in admitting the testimony of the two police officers.

## II.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Wight asserts he was denied effective assistance of counsel, primarily because his attorney failed to move for a mistrial on the basis of juror bias and failed to object to admission of the blood sample or blood analysis test results. Generally, this Court will not consider matters raised for the first time on appeal without a timely objection in the trial court. *State v. Mitchell,* 671 P.2d 213, 214 (Utah 1983); *State v. Steggell,* 660 P.2d 252, 254 (Utah 1983). However, we may consider assignments of error where no objection is made at trial to the extent that they bear upon a claim of incompetence of counsel. *State v. Malmrose,* 649 P.2d 56, 58 (Utah 1982).

In order to prevail on a claim of ineffective assistance of counsel, defendant must overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *State v. Frame,* 723 P.2d 401, 405 (Utah 1986). Defendant must prove not only that counsel's representation fell below an objective standard of reasonableness, but also that counsel's performance prejudiced defendant. *State v. Pursifell,* 746 P.2d 270, 275 (Utah Ct.App.1987). This Court will not second-guess a trial attorney's legitimate use of judgment as to trial tactics or strategy. *Codianna v. Morris,* 660 P.2d 1101, 1110 (Utah 1983); *Layton City v. Noon,* 736 P.2d 1035, 1040 (Utah Ct.App.1987). Also, failure to raise motions or objections which would be futile does not constitute ineffective assistance of counsel. *Malmrose,* 649 P.2d at 58. Therefore, we will examine the two issues not raised by counsel below for the limited purposes of deciding if counsel's failures constitute ineffective assistance of counsel.

### a. Juror Bias

■ We examine first the failure to move for a new trial on the basis of juror bias. The record discloses that Wight's trial attorney discussed the juror's possible bias and the option of moving for a mistrial with Wight. Although Wight claims he did not understand his attorney's explanation of the available options, Wight stated that he left the decision of whether to move for a mistrial to his attorney. Under the circumstances, we believe that the attorney's decision to proceed with the trial was a legitimate tactical judgment. Further, Wight has not shown that his trial counsel's representation fell below an objective standard of reasonableness. Accordingly, because we will not substitute our judgment for that of Wight's trial attorney, we hold that Wight was not denied effective assistance of counsel by his attorney's failure to move for a mistrial.

### b. Blood Sample and Test Results

■ We next consider the failure of Wight's counsel to object to admission of the blood sample and blood test results. Wight argues that the trial court erred in admitting his blood sample and blood test

results into evidence because the blood was not seized pursuant to a valid arrest and a proper foundation was not established. Utah Code Ann. § 41–6–44.10 (1985) provides that blood may be drawn from an unconscious person whether or not that person is under arrest, and defines the circumstances under which a person has consented to having blood drawn for purposes of establishing whether the person was driving while having a statutorily prohibited blood alcohol content. Section 41–6–44.10 states:

(1) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test ... of his breath, blood, or urine for the purpose of determining whether he was driving ... while having a blood alcohol content statutorily prohibited ... so long as the test is ... administered at the direction of a peace officer having grounds to believe that person to have been driving ... while having a blood alcohol content statutorily prohibited ...

. . . .

(3) Any person who is ... unconscious ... shall be deemed not to have withdrawn the consent provided for in subsection (1) of this section, and the test or tests may be administered whether such person has been arrested or not.

Wight claims that, according to *In re R.L.I.*, 739 P.2d 1123 (Utah Ct.App.1987), section 41–6–44.10 requires a valid arrest before blood may be drawn. However, *R.L.I.* stands only for the proposition that if an arrest has not taken place, the subject is entitled to know the purpose for which the blood is drawn and the subject may withdraw the statutory implied consent. In this case, Wight had been arrested and has failed to set forth any reasons why the arrest was not valid or why the procedures utilized were inconsistent with the statute. Section 41–6–44.10 does not require arrest prior to taking a blood sample, and allows drawing blood from an unconscious person with or without arrest.

Wight further argues the State laid an inadequate foundation for the blood sample and blood test results because the test was taken two hours or more after the accident, and because a sufficient chain of custody was not established. Utah Code Ann. § 41–6–44.5(2) (1985) provides that if the test is taken more than two hours after the alleged driving under the influence took place, the test results are admissible, "but the trier of fact shall determine what weight shall be given to the result of the test." Moreover, testimony of the technician and the state toxicologist sufficiently establish a chain of custody of the blood sample and test results. Therefore, the State properly laid a foundation for admissibility.

We conclude, as a result, that objecting to the admissibility of the blood sample and blood test results would have been futile. Therefore, Wight has failed to sustain his burden of establishing ineffective assistance of counsel for failure to object to the admissibility of the blood sample and blood test results. *See Malmrose*, 649 P.2d at 58.

### III.

### PRIOR CONVICTION

Wight's final contention is that the trial court erred in denying his motion in limine to exclude all evidence of his 1977 aggravated robbery conviction. In reviewing evidentiary rulings, we "will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the court so abused its discretion that there is a likelihood that injustice resulted." *State v. Gentry*, 747 P.2d 1032, 1035 (Utah 1987).

Wight's attorney mentioned the robbery conviction in his opening statement and elicited testimony from Wight regarding the conviction during direct examination. The testimony was limited to the fact of the conviction, with no explanation of the actual circumstances involved.[1] The State

---

**1.** Wight and his counsel presumably decided to present evidence of the prior conviction as part of their case-in-chief, as a tactical decision, rath-

er than allow the State to raise it by cross-examination. The State has not argued that presentation of the evidence by Wight constitutes a waiv-

did not ask questions or make any comments about the prior conviction. A jury instruction cautioned that consideration of the prior conviction was limited to weighing Wight's credibility as a witness, and for no other purpose.

The trial court allowed the evidence under Utah R.Evid. 609(a), which states:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved *dishonesty or false statement*, regardless of the punishment.

(Emphasis added). It is not clear from the record in this case, whether the prior conviction was found admissible under 609(a)(1) or (2), though Wight argues only that it should have been excluded under 609(a)(2).

No Utah cases have specifically construed 609(a)(2) since its adoption in 1983. However, in *State v. Banner*, 717 P.2d 1325, 1333–34 (Utah 1986), the Utah Supreme Court noted that Utah's Rule 609 is the federal rule verbatim and advised that federal case law should be consulted for advice in interpreting the rule. Rule 609 of the Federal Rules of Evidence is the result of compromise between those who believe that all criminal convictions are relevant on the issue of credibility and those who urge that there should be limits to particular types of criminal convictions. 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, 609–44. The former argue that all criminal convictions are relevant because they show bad character and people with bad character are more likely to lie. *Id.* at 609–59.

Others counter that only some criminal acts are relevant to credibility, that "[t]he relationship between crimes of violence and truth-telling is particularly tenuous," and that a conviction may reflect only a single atypical bad act, rather than wholesale iniquity. *Id.*

Under Federal Rule 609 as finally adopted there is still "much disagreement among the cases and commentators about which crimes are usable for [credibility] purposes" under 609(a)(2). *Id.* at 609–44. This disagreement encompasses the question of whether robbery and other crimes against property are crimes involving dishonesty or false statement. In *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir.1982), the court found that generally, crimes of violence, theft, or stealth are not crimes of dishonesty or false statement under the rule because there is no relationship to a propensity to testify truthfully or untruthfully. An exception exists only if the crimes were accomplished by fraudulent or deceitful means. *Id.* To the contrary, the New Mexico Supreme Court held that "[o]n the merits, robbery may not be a crime involving deceit, that is, false statement. However, it clearly involves theft, which is dishonesty." *State v. Day*, 91 N.M. 570, 577 P.2d 878, 884 (1978). In a per curiam opinion construing Rule 609's predecessor, Utah R.Evid. 21, the Utah Supreme Court stated that "[t]he prosecution correctly contends that impliedly theft is admissible since it obviously involves 'dishonesty.'" *State v. Cintron*, 680 P.2d 33, 34 (Utah 1984).[2] The obviousness of that proposition has been less clear to other jurisdictions and at least one of the members of this Court. *See United States v. Ortega*, 561 F.2d 803, 806 (9th Cir.1977); *State v. Morehouse*, 748 P.2d 217, 222 n. 2 (Utah Ct.App.1988) (J. Jackson, dissenting).

The difficulty of distinguishing between crimes involving "dishonesty and false

---

er of his motion to exclude, and, therefore, the issue is not addressed in this opinion. *See Jones v. Collier*, 762 F.2d 71 (8th Cir.1985) (waiver found); *State v. Ellerson*, 125 Ariz. 249, 609 P.2d 64 (1980) (no waiver).

**2.** Committee notes to the new Utah rules state they are intended to provide a fresh starting place in analysis. *State v. Banner*, 717 P.2d 1325, 1333 (Utah 1986). Therefore, we are not bound by interpretations which predate these rules.

statement" and those which do not was awknowledged in *United States v. Lipscomb*, 702 F.2d 1049 (D.C.Cir.1983). That court "has implicitly recognized as much by distinguishing between crimes 'that bear *directly* upon the accused's propensity to testify truthfully' and offenses which, while they have 'some bearing on an individual's credibility,' should not be automatically admitted into evidence." *Id.* at 1057 (emphasis in original). The court further observed that

> [r]obbery is generally less probative [of credibility] than crimes that involve deception or stealth. But it does involve theft and is a serious crime that shows conscious disregard for the rights of others. Such conduct reflects more strongly on credibility than, say, crimes of impulse, or simple narcotics or weapons possession.

*Id.* at 1070–71. The court found that it is within the trial court's power to make inquiries necessary to determine if a particular prior crime's circumstances are such that the evidence is probative under 609(a)(1) or included under 609(a)(2). The trial court "has discretion to determine when to inquire into the facts and circumstances underlying a prior conviction and how extensive an inquiry to conduct." *Id.* at 1068. The *Lipscomb* court also noted that the decision to make a factual inquiry is subject to deferential appellate review, utilizing an abuse of discretion standard. Others have argued, however, that under 609(a)(2) the court should not examine underlying acts, but should look only at the elements of the crime, as "convenience requires a rather mechanical rule." *Weinstein* at 609–85.

In *United States v. Carroll*, 663 F.Supp. 210 (D.Md.1986), the court followed *Lipscomb* and applied a factual inquiry process to a case in which the prosecution wished to use prior convictions for bank larceny and felony theft to. impeach defendant's testimony. The court said that a bank robbery conviction would usually fall under 609(a)(1), but particular facts might qualify it under 609(a)(2). The following language from *United States v. Papia*, 560 F.2d 827, 847 (7th Cir.1977), was quoted:

when the statutory offense of which the witness was convicted does not require proof of fraud or deceit as an essential element of the crime, a prior conviction may yet be admitted under Rule 609(a)(2) if the proponent of the evidence bears the burden of showing that the conviction "rested on facts warranting the dishonesty or false statement description."

*Carroll*, 663 F.Supp. at 214. In *Carroll*, the court held that the defendant's prior robbery conviction involved deceit and false statements and was, therefore, admissible to impeach him.

■ While all crimes involve, in some broad sense, an element of dishonesty, we agree with *Lipscomb* that the crime of robbery is not necessarily one of dishonesty or false statement for purposes of 609(a)(2) admissibility. Rather, we believe that under 609(a)(2) inquiry *may* be made, at the court's discretion, regarding the particular facts involved to determine if honesty was a factor. If honesty was involved, evidence of the prior conviction is automatically admissible under 609(a)(2). If such inquiry is not made or does not reveal acts of dishonesty or false statement, the trial court must apply 609(a)(1) and weigh probativeness against prejudice to the defendant in determining admissibility. Contrary to the concurring opinion, we do not believe this will be a burden on the trial courts, but will give them greater flexibility to either find circumstances indicating dishonesty, or engage in a balancing process to determine probative value, an exercise with which trial courts are familiar.

■ In this case, it appears that no inquiry about underlying facts was made. As a result, because we cannot determine if the actual crime involved dishonesty or false statement, we find that it was not admissible under 609(a)(2).

■ We next consider whether the prior conviction was admissible under 609(a)(1) to impeach Wight's testimony. Under 609(a)(1), evidence of a criminal conviction may be admitted if the crime was punishable by death or imprisonment in excess of one year and if the probative value out-

weighs the prejudicial effect. The Utah Supreme Court discussed Rule 609 in *Banner*, in which the State sought to impeach Banner, who was charged with sodomy and sexual abuse of a child, with his prior felony conviction for assault with intent to commit rape. *Banner*, 717 P.2d at 1334. Banner's motion to exclude the evidence was denied and Banner did not testify at trial. The Court applied 609(a)(1), requiring a balancing of probative value versus prejudice to the defendant, rather than 609(a)(2), presumably because the prior conviction was not viewed as one involving dishonesty or false statement. The Court held that the evidence should have been excluded because "[t]he crime of assault with intent to commit rape does not inherently reflect on defendant's character for truth and veracity. Instead, it sheds about the same light as any felony involving moral turpitude." *Id.* at 1334–35. In addition, *Banner* enumerated the following factors to consider under 609(a)(1):

[1] the nature of the crime, as bearing on the character for veracity of the witness.

[2] the recentness or remoteness of the prior conviction....

[3] the similarity of the prior crime to the charged crime, insofar as a close resemblance may lead the jury to punish the accused as a bad person.

[4] the importance of credibility issues in determining the truth in a prosecution tried without decisive nontestimonial evidence....

[5] the importance of the accused's testimony, as perhaps warranting the exclusion of convictions probative of the accused's character for veracity....

*Id.* at 1334. In *Banner*, the Court found that the prior conviction should have been excluded after application of the above principles in the weighing process, because the prior convictions were remote in time (between eight and nine years old), the nature of the prior crime (assault with intent to commit rape) would be highly inflammatory and prejudicial, and the defendant's testimony and credibility were critical.

In applying 609(a)(1) and the *Banner* criteria to this case, we find that the record of the in-chambers hearing on the motion to exclude Wight's prior aggravated robbery conviction is bereft of the *Banner* criteria or the balancing process. The State has the burden of establishing that the prior conviction is more probative than prejudicial. *Banner*, 717 P.2d at 1334. In *United States v. Hendershot*, 614 F.2d 648 (9th Cir.1980), as in this case, there was no evidence that the court required a balancing of interests. Rather, "[t]he trial court gave no indication of what standard it was employing; it merely ruled that the prior conviction would be admissible." *Id.* at 652. The Ninth Circuit found error, "because of the possibility that the trial court applied [an] improper legal standard...." *Id.* at 653. We, similarly, cannot ascertain from the record before us whether a proper balancing process occurred, and, indeed, it appears that the court did not consider admissibility under 609(a)(1), and, therefore, did not balance the competing considerations. Therefore, because the trial court did not utilize the *Banner* criteria and the balancing of probative value versus prejudicial effect, we find that the court erred in finding the prior conviction admissible.

■ We must also determine, however, if the error was harmless. Error is reversible "only if a review of the record persuades the court that without the error there was 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984) (quoting *State v. Hutchison*, 655 P.2d 635, 637 (Utah 1982)). In this case, Wight testified that he had consumed a large quantity of beer shortly before the accident, and had almost collided with another vehicle. The only part of his testimony which seriously conflicted with the view of events propounded by the State was Wight's assertion that he was only sleepy, not drunk. That testimony was refuted by evidence concerning his blood alcohol content. Also, the jury was instructed to consider the prior conviction only to assess Wight's credibility, and for no other purpose. As a result, we find that the results

of, the trial would not likely have been different if the evidence had been excluded, and, therefore, the error was harmless.

Affirmed.

BILLINGS, J., concurs.

GARFF, Judge: (concurring)

I have some problem with the majority opinion in its interpretation of Utah R. Evid. 609(a)(2). The majority concluded that because the trial court failed to take any evidence regarding the factual circumstances around defendant's prior conviction for aggravated robbery, there was no determination whether the actual crime involved dishonesty or false statement. Therefore, the conviction was inadmissible under the Rule.

The record indicates that the trial court had significant information on the nature and timing of defendant's prior conviction. Defendant committed the crime of aggravated robbery on February 18, 1977. He was convicted and sentenced to prison for this offense on February 28, 1978 and was paroled in 1980. He was tried on the present charge of automobile homicide on June 13, 1986, approximately six years after his release from prison and eight years after his conviction. At the pre-trial hearing on defendant's motion to exclude any testimony pertaining to this prior conviction, the State furnished the court with a copy of defendant's rap sheet. Counsel for defendant argued that defendant's conviction should be excluded, stating that he "would be the first to admit such a crime would go to a person's honesty and trustworthiness" but thought that its admission would be more prejudicial than probative. The trial court ruled that defendant's prior conviction was admissible under Rule 609(a).

Rule 609(a) provides as follows:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Where statutory language is clear and unambiguous, the statute must be held to mean what its language plainly expresses. 2A C. Sands, *Sutherland Statutory Construction* § 46.01 (4th ed. 1984). In construing such a statute, we must, therefore, give effect to the Congress's underlying intent by assuming that each term in the statute was used advisedly, *Gleave v. Denver & Rio Grande W. R.R. Co.*, 749 P.2d 660, 672 (Utah Ct.App.1988), giving the words their ordinary, plain meaning unless there is something in the total context of the legislation which would justify a different meaning. *In re M.L.T.*, 746 P.2d 1179, 1180 (Utah Ct.App.1987).

In Rule 609(a)(2), the terms "dishonesty" and "false statement" are separated by the term "or." "Or" is "[a] disjunctive particle used ... as a function word to indicate an alternative between different or unlike things...." Black's Law Dictionary 987 (5th ed. 1979). The plain meaning of Rule 609(a)(2) is that all felonies and misdemeanors involving *either* dishonesty *or* false statements are *automatically admitted* without balancing probative value against prejudicial effect, "or" indicating that "dishonesty" and "false statement" have different or unlike meanings.

The issue in the present case, then, is whether aggravated robbery involves either dishonesty or false statements. If it involves either, evidence of a conviction for aggravated robbery should be automatically admissible without balancing its probative value against its prejudicial effect.

The majority opinion implies that aggravated robbery does not *necessarily* involve dishonesty or false statement and, therefore, the trial court is obligated to make inquiry into the underlying facts of the crime to determine if either of those elements were present. In support of this position, it relies on *United States v. Lips-*

*comb,* 702 F.2d 1049 (D.C.Cir.1983). *Lipscomb* agonizes over the difficulty of distinguishing between crimes involving dishonesty and false statement and those which do not,[1] but finally concludes that the prior robbery conviction of Lipscomb was admissible under Rule 609(a)(1) because its probative value outweighed its prejudicial effect. The court also stated that the trial judge, in exercising his discretion, made this determination based on the circumstances of the case, and did not abuse his discretion. *Id.* at 1073. Thus, the *Lipscomb* court and the majority opinion conclude that robbery is not necessarily an act of dishonesty and that the trial court is required to examine the factual circumstances of robbery to determine if dishonesty or false statement is involved.

However, other circuits have approved admission of prior robbery convictions under Rule 609(a)(2), reasoning that theft offenses are fundamentally dishonest: *United States v. Grandmont,* 680 F.2d 867, 871 n. 3 (1st Cir.1982) (robbery, as a theft offense, reflects adversely upon credibility); and *United States v. Halbert,* 668 F.2d 489, 495 (10th Cir.1982) *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982) ("It is improbable that one who undertakes to rob a bank with a gun will prove to be a person of high character who is devoted to truth."). These cases are consistent with rulings from other jurisdictions. *See, e.g., Alexander v. State,* 611 P.2d 469, 476 (Alaska 1980) ("Although robbery involves the additional element of force or putting in fear, it, like larceny, concerns the unlawful taking of something of value. We hold that robbery is a crime of dishonesty within the terms of Alaska Rule of Evidence 609(a)."); *People v. Holman,* 43 Ill.App.3d 56, 1 Ill.Dec. 833, 836, 356 N.E.2d 1115, 1118 (1976) ("We recognize that the crime of armed robbery does involve an element of violence, but, as a form of stealing, it also reflects on a person's honesty. We are of the opinion ... that the crime of robbery, armed or other-

wise, is probative of the perpetrator's veracity as a witness."); *State v. Day,* 91 N.M. 570, 577 P.2d 878, 884 (1978) ("[R]obbery may not be a crime involving deceit, that is, false statement. However, it clearly involves theft, which is dishonesty."); *Commonwealth v. Campbell,* 244 Pa.Super.Ct. 505, 368 A.2d 1299, 1301 (1976) ("[A]ggravated robbery is a crime involving serious moral turpitude ... [and] certainly indicates a propensity for dishonesty.... As such it would be highly relevant in determining the truth of what the defendant had to say." The trial court did not abuse its discretion in ruling that the record of the crime could be introduced to impeach defendant's testimony.)

The majority opinion quotes *United States v. Papia,* 560 F.2d 827, 847 (7th Cir.1977) as support for the argument that conviction of robbery alone is not sufficient to show dishonesty or false statement, and, therefore, that further inquiry is required to determine if the behavior was based on fraudulent or deceitful conduct. Although apparently sympathetic to this approach, the *Papia* court, highlighting the substantial split of authority on this issue, declined to enter the controversy:

Precisely because of the variance between the common meaning of "dishonesty" and the more restrictive meaning in which Congress apparently used the word, courts have split on the question of whether prior convictions for crimes involving stealing, without more, are admissible for impeachment purposes under Rule 609(a)(2).

As the developing conflict between the Circuits reveals, reasonable men may disagree about whether a witness's propensity to steal reflects upon his honesty in a manner that bears adversely on his propensity to tell the truth. Frankly, we are not anxious to enter the fray and, fortunately, are able to decide this case without having to rule on the general question of whether all crimes involving

---

1. "Robbery is generally less probative [of credibility] than crimes that involve deception or stealth. But it does involve theft and is a serious crime that shows conscious disregard for the rights of others. Such conduct reflects more strongly on credibility than, say, crimes of impulse, or simple narcotics or weapons possession." *Lipscomb,* 702 F.2d at 1070–71.

stealing necessarily involve "dishonesty" within the meaning of Rule 609(a)(2). *Id.* at 846–47. *See also United States v. Carroll,* 663 F.Supp. 210, 214 (D.Md.1986).

In my view, the preferable line of authority is that which holds robbery to be a crime involving dishonesty because it contains the element of theft. This is consistent with the per curiam opinion of *State v. Cintron,* 680 P.2d 33, 34 (Utah 1984), which stated: "[t]he only conviction for misdemeanor that would be admissible to test credibility would be one 'involving dishonesty or false statement.' The prosecution correctly contends that impliedly theft is admissible since it obviously involves 'dishonesty.' " Requiring further inquiry into the factual circumstances of an aggravated robbery that occurred nine years previously, in an effort to show that the conviction "rested on facts warranting the dishonesty or false statement description,"

*Papia,* 560 F.2d at 847, would appear to be a useless act and impacts heavily on judicial procedures and resources. Additionally, consideration must be given to the fact that, in many trials, no transcript is prepared and a review by a subsequent court of the proof at trial of a prior conviction could be a very time-consuming, if not frustrating, experience.

Robbery, which includes theft, must certainly be a crime with veracity-related elements. Therefore, I would permit the prior aggravated robbery conviction to come in automatically under Rule 609(a)(2).