STATE of Utah, Plaintiff and
Respondent,

v.

Ronald E. WRIGHT and Susan R.
Riding, Defendants and
Appellants.

No. 860298–CA.

Court of Appeals of Utah.

Oct. 14, 1987.

Robert Van Sciver, Margo L. James, Salt Lake City, for plaintiff-respondent.

David L. Wilkinson, State Atty. Gen., David B. Thompson, Asst. Atty. Gen., for defendants-appellants.

Before BILLINGS and BENCH, JJ., and HANSON * (District Judge).

OPINION

BILLINGS, Judge:

Ronald E. Wright ("Wright") and Susan R. Riding ("Riding") appeal from their convictions after a bench trial for distribution of, and arranging for the sale of, a controlled substance. Utah Code Ann. §§ 58–

* Timothy R. Hanson, Judge, Third Judicial District Court, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

37–8(1)(a)(ii), 58–37–8(1)(a)(iv) (1987). Wright and Riding claim entrapment for each of their convictions. Wright, in the alternative, seeks reversal of two convictions claiming there is insufficient evidence in the record to support the charges. We affirm.

Because an entrapment defense is highly factual in nature, we review the facts in detail. Scott O'Brien ("O'Brien"), the confidential informant and stepbrother of Riding, was arrested on a warrant. O'Brien volunteered to give information about drug trafficking at a certain residence the car passed en route to the Davis County Jail. As a result, O'Brien's [1] name was given to undercover Officer Lon Brian.

Officer Brian contacted O'Brien on December 28, 1985, and O'Brien agreed to assist Officer Brian in an undercover purchase of drugs that evening. Officer Brian drove O'Brien to the previously identified Wright-Riding residence. O'Brien entered the residence alone, and, after talking with Riding, he invited Officer Brian inside. Officer Brian then purchased ⅛ of an ounce of marijuana from Riding. Before leaving, Officer Brian inquired about the possibility of purchasing a larger quantity. Riding provided him with a price list and told him to return later that evening to make his purchase.

For this transaction, Riding was charged with one count of distribution of a controlled substance for value, in violation of Utah Code Ann. § 53–37–8(1)(a)(ii) (1987). However, the trial court held that Riding had been entrapped, finding Officer Brian improperly used O'Brien's close personal relationship with his stepsister.

Later on December 28, 1985, at approximately 10:00 p.m., Officer Brian and O'Brien again went to the Wright-Riding residence. Wright removed at least six (6) premeasured baggies of marijuana from a kitchen drawer, and showed them to Officer Brian. From the selection offered, Officer Brian purchased one ounce of marijuana and one gram of cocaine from Wright. Riding was present at the transaction, and showed the cocaine bindle to

Officer Brian, while Wright conducted the sale. As a result of this transaction, Wright was convicted of two (2) counts of distribution of a controlled substance for value, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1987). Riding was convicted of two counts of arranging for the sale of a controlled substance, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (1987).

Following December 28, 1985, Officer Brian, without O'Brien's assistance, continued to contact Wright to purchase drugs. He specifically testified to two subsequent contacts. On January 6, 1986, Officer Brian telephoned Wright and unsuccessfully attempted to get Wright to deliver drugs to him in the Kaysville area. Wright refused because he did not like the Kaysville area. The next day, January 7, 1986, Officer Brian personally went to the Wright-Riding residence. He testified that Wright did not have any marijuana, but that Wright did offer Officer Brian "cross tops" (methamphetamine), which Officer Brian did not purchase, believing the tablets may be simply caffeine. Ultimately, on January 17, 1986, Officer Brian testified that he purchased ¼ of an ounce of marijuana and fifty (50) tablets of methamphetamine from Wright at his home.

Wright testified to a very different version of the facts. He claimed that Officer Brian contacted him at least twenty (20) times, and personally came to the Wright-Riding residence at least ten (10) times. Wright testified that Officer Brian attempted to make three (3) appointments with him for a drug delivery at specified locations and that Wright did not appear at any of the locations.

Thomas Naples, appearing as a witness for Wright, testified that he had seen Officer Brian at the Wright-Riding residence six (6) or seven (7) times following the evening of December 28, 1985, and had thrown him off the porch on one occasion. As a result of the January 17, 1986 transaction, Wright was convicted of two counts of distribution of a controlled substance for

1. Scott O'Brien did not testify at trial.

value, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1987).

Two issues are raised on appeal:

(1) Did the actions of undercover Officer Brian constitute entrapment of either Wright or Riding?

(2) Was there sufficient evidence to support Wright's convictions for distribution of a controlled substance for value as a result of the December 28, 1985 10:00 p.m. transaction?

## I. STANDARD OF REVIEW

The standard of review for bench trials in criminal cases has been revised recently by the Utah Supreme Court. *State v. Walker*, 743 P.2d 191 (Utah 1987). The supreme court, in modifying the standard,[2] relied on Rule 52(a) of the Utah Rules of Civil Procedure, effective January 1, 1987, which it found applicable in criminal cases by virtue of Utah Code Ann. § 77–35–26(g) (1982). In pertinent part, Rule 52(a) provides:

> In all actions tried upon the facts without a jury ... [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and *due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.*

(Emphasis added.)

The Utah Supreme Court in *Walker* "examined the impact of drawing from the federal rules in the promulgation of our new Rule 52" and interpreted the "clearly erroneous" standard to require:

> that if the findings (or the trial court's verdict in a criminal case) are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake

has been made, the findings (or verdict) will be set aside.

*Walker*, 743 P.2d at 193.[3] Application of this new standard does not eliminate the traditional deference afforded the fact-finder to determine the credibility of the witnesses. *See* Utah R.Civ.P. 52(a); *State v. Bagley*, 681 P.2d 1242, 1244 (Utah 1984) ("It is not our function to determine the credibility of conflicting evidence or the reasonable inferences to be drawn therefrom.").

## II. ENTRAPMENT

The affirmative defense of entrapment is statutorily defined:

> Entrapment occurs when a law enforcement officer or a person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Utah Code Ann. § 76–2–303(1) (1977). By enacting section 76–2–303, the Legislature rejected the subjective standard of entrapment, which focuses on a defendant's predisposition to commit the offense. *State v. Taylor*, 599 P.2d 496, 499–500 (Utah 1979). Consequently, in Utah the focus of inquiry has now shifted to the nature of the government's conduct. *Id.; See* Note, *Entrapment*, 73 Harvard L. Rev. 1333, 1335–36 (1960).

Under the objective view of entrapment, the focus is not on the propensities and predisposition of the specific defendant, but on whether the police conduct revealed in the particular case falls below

---

**2.** Prior to *Walker*, in criminal cases tried either to a jury or to the bench, the verdict would be reversed "only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt." *State v. Isaacson*, 704 P.2d 555, 557 (Utah 1985).

**3.** The supreme court, quoting Wright & Miller, stated:

The appellate court ... does not consider and weigh the evidence de novo. The mere fact that on the same evidence the appellate court might have reached a different result does not justify it in setting the findings aside. It may regard a finding as clearly erroneous only if the finding is without adequate evidentiary support or induced by an erroneous view of the law.

*Walker*, 743 P.2d at 193.

standards, to which common feelings respond, for the proper use of governmental power.... The objective view provides a solid definitive standard upon which the defense can rest, i.e., does the conduct of the government comport with a fair and honorable administration of justice?

*Taylor*, 599 P.2d at 500. The propriety of the inducement is measured by its probable effect upon a hypothetical person in the "setting in which the inducement took place." *See State v. Cripps*, 692 P.2d 747, 749–50 (Utah 1984); *State v. Salmon*, 612 P.2d 366, 368 (Utah 1980); *Taylor*, 599 P.2d at 503.

■ Although each entrapment case must be judged on its own facts, the Utah Supreme Court has provided some guidance. Circumstances that may be relevant for this purpose include:

> Extreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money are examples, depending on an evaluation of the circumstances in each case, of what might constitute prohibited police conduct. In evaluating the course of conduct between the government representative and the defendant, the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person.

*Taylor*, 599 P.2d at 503. Personalized high-pressure tactics or appeals to extreme vulnerability *may*, under appropriate circumstances, be sufficient to constitute illegal inducement under the objective test. *See State v. Martin*, 713 P.2d 60, 62 (Utah 1986). *See, e.g., State v. Sprague*, 680 P.2d 404 (Utah 1984); *State v. Taylor*, 599 P.2d 496 (Utah 1979). However, such matters as the character of the suspect, his predisposition to commit the offense, and his subjective intent are irrelevant. "Permissible police activity does not vary according to the particular defendant concerned."

*Taylor*, 599 P.2d at 502. If the police conduct would create a substantial risk that a normal law-abiding person would be induced to commit a crime, entrapment has occurred regardless of the predisposition of the defendant. *See People v. Fraker*, 63 Mich.App. 29, 33, 233 N.W.2d 878, 881 (1975).

Wright and Riding argue that they were entrapped by Officer Brian's exploitation of O'Brien's close personal relationship with them. Wright additionally argues that he was entrapped into committing the offenses on January 17, 1986 because of Officer Brian's overzealous and relentless requests to purchase narcotics. Each transaction must be analyzed separately to determine whether Officer Brian's conduct, under the objective test, was a proper use of governmental power.

### A. December 28, 1985 10:00 p.m. Transaction

■ Prior to the 10:00 p.m. transaction, Officer Brian had visited the Wright-Riding residence with O'Brien, and purchased ⅛ of an ounce of marijuana from Riding. At that same time, in response to Officer Brian's inquiry about a larger purchase, Riding gave him a price list and invited him to return later that evening.

Brian and O'Brien returned to the Wright-Riding residence at 10:15 p.m. Riding greeted them at the front door and escorted them to the kitchen where Wright displayed at least six (6) bags of marijuana. Riding exhibited a small paper bindle containing one gram of cocaine. After negotiation between Wright and Officer Brian, Wright agreed to sell to Officer Brian one gram of cocaine and one ounce of marijuana for $200.00.

The conduct of undercover Officer Brian outlined above afforded Riding and Wright an opportunity to make a narcotics sale. It did not constitute entrapment. The trial court properly found that any improper use of O'Brien's family relationship with Riding tainted, at most, only the first purchase from Riding. *See State v. Stewart*, 729 P.2d 610, 611, *on reh'g*, 729 P.2d 612, 613–14 (Utah 1986) (inconsistent criminal verdicts are not grounds for reversal).

Officer Brian, not O'Brien, expressed an interest in purchasing larger quantities of marijuana. His appeal in no way played on O'Brien's personal relationship with Riding. During the 10:15 p.m. transaction, Wright willingly negotiated with Officer Brian as to price and quantities. O'Brien's participation was minimal. There is nothing in the record to suggest that Officer Brian or O'Brien capitalized on a special relationship between Riding and O'Brien to make this purchase. There were no pleas of desperation nor appeals to friendship or loyalty. The conduct of the officer was a proper use of governmental authority.

B. *January 17, 1986 Transaction*

■ The evidence adduced at trial was in conflict as to the January 17, 1986 transaction. The following credible facts support the trial court's verdict. Officer Brian, without O'Brien's assistance, continued to contact Wright soliciting future drug purchases. He contacted Wright on two (2) occasions subsequent to the December 28th transaction. On January 6, 1986, Officer Brian contacted Wright by phone attempting to procure marijuana from Wright. Wright refused to deliver drugs to the Kaysville area as he said he did not like the area. On January 7, 1986, Officer Brian went to the Wright-Riding residence seeking marijuana. According to Officer Brian, Wright did not have any marijuana, but did have "cross tops" (methamphetamine) stored in a kitchen cupboard, which Officer Brian declined to purchase.

On January 17, 1986, Officer Brian claims to have purchased ¼ of an ounce of marijuana and fifty (50) tablets of methamphetamine from Wright at his residence.

Wright argues that the procurement and delivery of the marijuana and methamphetamine tablets were the result of Officer Brian's relentless requests, which induced him to commit the offenses.[4] Although the extent of Officer Brian's contact with Wright after the December 28th transaction is disputed, the record indicates, and the trial court found, Officer Brian's testimony was firm and consistent. He denied making any contacts with Wright other than on January 6, 7, and 17. Where the credibility of witnesses is at issue, we defer to the trier-of-fact's assessment. *See State v. Bagley*, 681 P.2d 1242, 1244 (Utah 1984). We do not find the trial court's verdict against the clear weight of the evidence nor do we reach a definite and firm conviction that a mistake has been made in this case. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

Two contacts, one by phone and one in person, from a casual acquaintance, may be annoying but are unlikely to induce an "normal person" to commit these criminal offenses. *See Taylor*, 599 P.2d at 503. The defense of entrapment is not available where a law enforcement officer merely affords a person an opportunity to commit the offense. Utah Code Ann. § 76–2–303(1) (1977); *State v. Taylor*, 599 P.2d 496 (Utah 1979). Officer Brian reasonably persisted in his three attempts to purchase drugs from Wright. Wright never refused to sell him drugs but merely postponed the sale because of problems with location and supply.

We do not find that Officer Brian used inappropriate high-pressure tactics. *See State v. Martin*, 713 P.2d 60, 62 (Utah 1986). Accordingly, we reject Wright's contention that he was entrapped into distributing the marijuana and cocaine.

### III. SUFFICIENCY OF THE EVIDENCE

■ As an alternative challenge to his conviction of two counts of distribution on December 28, 1985, Wright contends there is insufficient evidence in the record to support the charge of distribution of a controlled substance for value. Wright relies on *State v. Ontiveros*, 674 P.2d 103, 105–06 (Utah 1983), claiming that the State did not prove that he made a profit from the drug sale, and thus he was not guilty of distribution of a controlled substance for value. Wright's reliance on *Ontiveros* is mis-

---

**4.** Alternatively, Wright denies that he sold any drugs to Officer Brian after the December 28th transaction. Such denial does not preclude the assertion of entrapment. Utah Code Ann. § 76–2–303(3) (1977).

placed. As is made clear in the subsequent case of *State v. Udell*, 728 P.2d 131, 134 (Utah 1986), "whether the defendant realizes a profit or not is irrelevant." The relevant concern is whether the defendant performed the actual sale, or merely acted as an agent between the officer and the source. The latter action does not fall within the prohibition of distribution of a controlled substance for value. *Udell*, 728 P.2d at 133–34; *Ontiveros*, 674 P.2d at 104.

Just as in *Udell*, Wright personally met the undercover officer at his home, previously had made the arrangements to pick up the controlled substances, and sold Officer Brian the cocaine and marijuana. As noted by the supreme court in *Udell*, "[h]e did not merely find and direct the officer to another seller." *Udell*, 728 P.2d at 134. Wright's actions extended beyond a mere "accommodation call" to see if a source would sell to Officer Brian. *See Udell*, 728 P.2d at 134. The record clearly supports Wright's conviction of distribution of a controlled substance for value.

Affirmed.

BENCH and HANSON, JJ., concur.