STATE of Utah, Plaintiff–Respondent,

v.

Kenneth Eugene WYNIA, Defendant–Appellant.

No. 870113–CA.

Court of Appeals of Utah.

May 9, 1988.

Alan K. Jeppeson, Tooele, J. Franklin Allred (argued), Margo L. James, Salt Lake City, for defendant-appellant.

David L. Wilkinson, Atty. Gen., Creighton C. Horton, II, Stanley H. Olsen (argued), Asst. Attys. Gen., for plaintiff-respondent.

Before BENCH, JACKSON and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Defendant seeks reversal of his jury conviction of four counts of distribution of a controlled substance in violation of Utah Code Ann. § 58–37–8 (1985) (Amended 1986, 1987).[1] Defendant appeals, claiming entrapment, a defect in the chain of custody of the narcotic exhibits, and ineffective assistance of counsel. We affirm.

Because the defenses raised by appellant are factual in nature, we review the facts in detail. *See State v. Wright*, 744 P.2d 315 (Utah Ct.App.1987). On January 3, 1986 two undercover female police officers went to Harris Lanes bowling alley in Tooele, split up and began mingling. Officer Paquette, while playing pool, talked with a man named Tony about "partying" and the availability of drugs. Paquette told him she would like some marijuana and Tony agreed to get some. Tony went across the room and brought back defendant. The three discussed the purchase of a quarter ounce of marijuana for $30. Paquette gave them the money. Defendant and Tony left and returned about an hour later.

While Officer Paquette was talking with Tony, Officer Pusey was playing pool with defendant. After a brief conversation about "partying," she asked if he could get her some cocaine. Defendant said he would get what he could. Neither Paquette nor Pusey were aware of the other's transaction until defendant left with Tony to obtain the cocaine and marijuana.

When defendant and Tony returned, they asked the officers for a ride to the Sandbagger Lounge. As they walked to the officers' car, defendant handed Pusey a

---

1. The statute in effect at the time of the offense provided:

    58-37-8. Prohibitd acts—Penalties.

    (1) Prohibited acts A—Penalties:

    (a) Except as authorized by this chapter, it is unlawful for any person knowingly and intentionally:

    (i) to produce, manufacture, or dispense, or to possess with intent to produce, manufacture, or dispense, a controlled or counterfeit substance;

    (ii) to distribute for value or possess with intent to distribute for value a controlled or counterfeit substance;

    (iii) to possess a controlled substance in the course of his business as a sales representative of a manufacturer or distributor of substances listed in Schedules II through V except under an order or prescription;

    (iv) to agree, consent, offer, or arrange to distribute or dispense a controlled substance for value or to negotiate to have a controlled substance distributed or dispensed for value and distribute, dispense, or negotiate the distribution or dispensing of any other liquid, substance, or material instead of the specific controlled substance so offered, agreed, consented, arranged, or negotiated.

    (b) Any person who violates Subsection (1)(a) with respect to:

    (i) a substance classified in Schedules [Schedule] I or II is, upon conviction, guilty of a second degree felony and upon a second or subsequent conviction of Subsection (1)(a) is guilty of a first degree felony;

    (ii) a substance classified in Schedules III and [or] IV, or marihuana is, upon conviction, guilty of a third degree felony, and upon a second or subsequent conviction punishable under this Subsection (1)(b)(ii) is guilty of a second degree felony; ....

    This statute was amended in 1986 and 1987, but the amendments are not relevant to our decision.

small bindle of cocaine and she gave him $40. (There is some discrepancy as to when the transaction took place as Paquette testified that she saw the defendant pass Pusey a small bindle while they were driving to the lounge). While seated in the car in the lounge's parking lot, defendant passed Paquette a baggie of marijuana.

On January 10, 1986, the two officers returned to the Sandbagger Lounge in Tooele where they once again encountered defendant. After playing some pool, Officer Pusey asked defendant if he could get her some cocaine. He agreed, made some phone calls, and introduced her to a man named Matt. Matt sold her a bindle of cocaine for $35, which he had obtained from someone else at the bar. Officer Paquette asked defendant for marijuana. He told her that he would take her to get the marijuana. Later that evening they went to a trailer park where defendant introduced her to a woman named Sherry. Sherry sold Paquette a baggie of marijuana for $45. Defendant witnessed all transactions.

After the officers received the substances, they marked them, and placed them in envelopes, which were marked and sealed, and then placed the envelopes into the night deposit bin of the Salt Lake City evidence room. At trial the officers identified the envelopes, and the contents of the envelopes as bearing their handwriting showing the date, time, and their IBM number.

Earl Price, an officer charged with handling evidence in narcotic cases, received the envelopes from the evidence custodian, sealed and unopened. He delivered them to David Murdock, a criminologist at the state toxicology laboratory, to have them analyzed. Murdock did not testify at trial as to receiving the evidence, nor delivering the evidence to the lab technicians, who performed the analysis.

Mr. Weaver and Mr. Smith, state lab analysts, received the exhibits in the sealed envelopes. After completing their analysis, they put the drugs back into the plastic bags, placed their seal on the bags, put the plastic bags into the envelopes, placed their seal on the envelopes and put the envelopes into the evidence locker room at the laboratory. Price retrieved the envelopes from the state lab, and transported them back to the Salt Lake City evidence room.

Before trial, defendant claimed entrapment as a defense pursuant to Utah Code Ann. § 76-2-303 (1978). After a hearing, the court denied the motion, but allowed the issue of entrapment to be presented to the jury. At trial, defendant objected to the introduction of the drug exhibits, claiming the chain of custody had not been established. The court overruled his objection and the exhibits were admitted.

The jury found defendant was not entrapped by the officers and convicted him on four counts of distribution of a controlled substance. Defendant appeals and asks this court to reverse his convictions.

## ENTRAPMENT

Entrapment is a statutory defense defined in Utah Code Ann. § 76-2-303(1) (1978):

> Entrapment occurs when a law enforcement officer or a person directed by or acting in co-operation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

The legislature, in adopting section 76-2-303(1) rejected the subjective standard of entrapment, and adopted the objective view. *State v. Taylor*, 599 P.2d 496, 499-500 (Utah 1979). The focus under the objective standard is not on the propensities and predispositions of the specific defendant, but on whether the police conduct revealed in the particular case falls below common standards for the proper use of governmental power. Under the objective test for entrapment the critical question is whether the conduct of the government comports with a fair and honorable administration of justice. *State v. Taylor*, 599

P.2d at 499–500; *State v. Wright,* 744 P.2d at 318.

If the police conduct creates a substantial risk that an otherwise law abiding person would be induced to commit a crime, entrapment has occurred. *State v. Wright,* 744 P.2d at 318. Entrapment however, has not occurred if a law enforcement officer merely affords a person an opportunity to commit the offense. *Id. See also State v. Taylor,* 599 P.2d at 500; section 76–2–303(1). The Utah Supreme Court, in articulating what conduct on the part of law enforcement officers is sufficient to constitute entrapment, has condemned personalized high pressure tactics, appeals to extreme vulnerability, and offers of inordinate sums of money. *See State v. Martin,* 713 P.2d 60 (Utah 1986); *State v. Sprague,* 680 P.2d 404 (Utah 1984); *State v. Kourbelas,* 621 P.2d 1238 (Utah 1980); *State v. Taylor,* 599 P.2d at 496.

■ Defendant contends that he was entrapped because the undercover officers were female; they met the defendant at a social setting; they bought him drinks; they had no prior reason to suspect him of drug dealing; and they initiated the conversation about drugs. After examining carefully the factual content of each transaction, we believe the undercover officers "merely afforded defendant the opportunity to commit a crime," and therefore no entrapment occurred.

### January 3, 1986 Transaction

The officers testified they went to Harris' bowling alley/lounge about 9:00 p.m. on January 3, 1986. Officer Pusey played pool with defendant. She asked him only once if he could get cocaine for her. The defendant left and later returned with a ¼ gram of cocaine which Pusey agreed to purchase for $40. The relationship between the defendant and Pusey was nothing more than a casual social contact and there is no evidence of badgering.

Officer Paquette had a conversation about "partying" and drugs with Tony. Paquette asked Tony to get her some "smoke." Tony introduced her to defendant and the three negotiated a price of $30 for a ¼ ounce of marijuana. Paquette only had to ask for marijuana once; she did not represent herself as a drug addict; she made no sexual advances nor were any made by defendant; there were no pleas or high pressure tactics.

### January 10, 1986 Transaction

On January 10, 1986, the two officers met defendant at the Sandbagger Lounge. Pusey asked defendant if he could once again get her some cocaine. Defendant introduced Pusey to Matt, who subsequently sold her a ¼ gram of cocaine for $30. Paquette asked defendant if he could get her more marijuana. After defendant arranged the sale of cocaine to Pusey, defendant drove Paquette to a trailer court where defendant arranged for Paquette to purchase marijuana for $45. No pressure tactics were used by either officer. All the officers had to do was ask.

Defendant, in claiming entrapment, relies on *State v. Kaufman,* 734 P.2d 465 (Utah 1987) (entrapment was found when the officer was selling her youth and attractiveness to induce the offense); *State v. Sprague,* 680 P.2d at 404 (the officer's persistent requests and prodding constituted entrapment); *State v. Kourbelas,* 621 P.2d at 1238 (repetitive requests by the officer constituted entrapment); and *State v. Taylor,* 599 P.2d at 496 (extreme pleas of illness and sympathy combined with an intimate relationship constituted entrapment). Each of these cases are factually distinguishable. There is no evidence that the officers used their sexual attractiveness or made repeated unsuccessful requests prodding the defendant to commit the offenses. The conduct of the officers comports with a fair and honorable administration of justice. Accordingly, we reject defendant's contention that he was entrapped into committing the offenses.

## CHAIN OF CUSTODY

■ Defendant next contends that the marijuana and cocaine sold to the undercover officers on January 3 and 10, 1986 were admitted into evidence without proper foundation. Specifically, he alleges a de-

fect in the chain of custody because David Murdock, the state crime laboratory criminologist who accepted custody of the exhibits from the police officer, did not testify at trial, nor did the criminologists who analyzed the exhibits testify that they obtained the exhibits directly from Murdock.

Before a substance connected with the commission of a crime is admissible as evidence, there must be a showing that the proposed exhibit is what it purports to be and is in substantially the same condition as it was at the time of the crime. *State v. Madsen,* 28 Utah 2d 108, 110–111, 498 P.2d 670, 672 (1972). The circumstances surrounding the custody of the article and the likelihood of tampering are factors to be considered in determining its admissibility. *Id.* If after consideration of these factors the court is satisfied that the substance has not been changed or altered, it may permit its introduction into evidence. The ruling of the court in this regard will not be overturned unless there is a showing of an abuse of discretion. *Id.*

Once the evidence is in the hands of the state, it is generally presumed that the exhibits were handled with regularity, absent an affirmative showing of bad faith or actual tampering. *See State v. Eagle Book, Inc.,* 583 P.2d 73, 75 (Utah 1978); *United States v. Coades,* 549 F.2d 1303 (9th Cir.1977). The party proffering the evidence is not required to eliminate every conceivable possibility that the evidence may have been altered. *State v. Bradshaw,* 680 P.2d 1036, 1040 (Utah 1984).

No showing is made, nor has it been suggested, that the evidence was lost, exchanged, or tampered with in any way. While the analysts did not testify that they received the evidence from Murdock, they did testify that the evidence was still in sealed and unopened envelopes with the appropriate identifying marks, strongly indicating that the evidence was still in its original form.

Murdock's failure to testify is at most a weak link in the chain of custody. A weak link in the chain of custody and any doubt created by it go to the weight of the evidence once the trial court has exercised the discretion to admit it. *State v. Bradshaw,* 680 P.2d at 1039. As there is no evidence suggesting that the exhibits were not in substantially the same condition as at the time of the crime, the trial court did not abuse its discretion and correctly admitted the exhibits into evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Appellate courts must be cautious in reviewing trial counsel's performance. It is easy for a defendant to second guess counsel's assistance with the aid of hindsight after conviction. Likewise, it is tempting for a court in examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission was unreasonable, forgetting that in trying a case counsel constantly must make professional calculations and assessments as to the impact on the jury and the court of various approaches. *Strickland v. Washington,* 466 U.S. 668, 689–690, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In assessing the performance of a trial attorney, every effort must be made to reconstruct the totality of the circumstances surrounding counsel's challenged conduct and evaluate that conduct from counsel's professional perspective at that time. The court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Defendant claims the following deficiencies: (1) counsel did not point out the discrepancies in the state's chief witnesses' testimonies, (2) counsel did not highlight for the jury the acts of the undercover officers which constituted entrapment, (3) counsel did not argue the applicable law and facts before submitting the issue to the court in a pre-trial entrapment hearing, and (4) counsel failed to emphasize the alleged weakness in the chain of custody once the court admitted the challenged exhibits into evidence.

To succeed on a claim of ineffective assistance of counsel requires a showing that counsel made errors so serious that counsel

was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064; *State v. Morehouse,* 748 P.2d 217, 219 (Utah Ct.App.1988). In order to show prejudice to his case, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. *See also State v. Morehouse,* 748 P.2d at 219; *State v. Archuleta,* 747 P.2d 1019, 1023 (Utah 1987).

Defendant has failed to persuade us that his counsel's performance was deficient. The discrepancies in the testimony of the two police officers were minor and were pointed out to the jury in counsel's closing arguments. Defendant's contention of counsel's failure to highlight the acts of the officers constituting entrapment to the jury is without merit. In closing arguments counsel argued entrapment, read the jury instructions applicable to entrapment, and emphasized that the officers initiated the conversation about drugs.

Defendant's argument that counsel failed to argue the applicable law and facts to the judge in the pre-trial entrapment hearing is without merit. After the trial judge heard counsel's arguments and ruled against them, counsel stated to the court that the purpose of the motion was to insure the entrapment defense could be raised at trial. While counsel was successful in getting the issue before the jury, he was unsuccessful in persuading the jury defendant was entrapped. A lawyer's legitimate exercise of judgment in the choice of trial strategy that does not produce the anticipated result does not constitute ineffective assistance of counsel. *Codianna v. Morris,* 660 P.2d 1101, 1109 (Utah 1983); *State v. McNicol,* 554 P.2d 203, 205 (Utah 1976).

Finally, counsel's not pointing out to the jury the weakness in the chain of custody of the drugs after the court admitted the evidence does not support a finding of ineffective assistance of counsel. The analysts testified that when they received the evidence it was still in the unopened, sealed envelopes, strongly indicating that the evidence was still in its original form. Competent counsel could determine that it was fruitless to pursue this issue.

Counsel's performance was not deficient, and thus cannot be prejudicial. We therefore find defendant's claim of ineffective assistance of counsel without merit.

We are not persuaded that there was any error which would warrant the reversal of defendant's conviction. Accordingly, we affirm.

JACKSON and BENCH, JJ., concur.