STATE of Utah, Plaintiff and Appellee,

v.

Daniel Ryon RICHARDSON, Defendant
and Appellant.

No. 910631–CA.

Court of Appeals of Utah.

Nov. 25, 1992.

Brooke C. Wells and Ronald S. Fujino
(argued), Salt Lake City, for defendant and
appellant.

R. Paul Van Dam and Todd A. Utzinger
(argued), Salt Lake City, for plaintiff and
appellee.

Before BENCH, P.J., and BILLINGS and
GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Daniel Richardson appeals
from a conviction following a guilty plea of
attempted unlawful distribution of a con-
trolled substance, a third degree felony, in
violation of Utah Code Annotated section
58–37–8(1)(a)(ii) (Supp.1991). Defendant
entered his plea conditioned upon his right
to appeal the trial court's denial of his
motion to dismiss. *See State v. Sery*, 758
P.2d 935, 938–39 (Utah App.1988). Defen-
dant based his motion to dismiss on an
entrapment defense. We affirm.

## BACKGROUND

"Because an entrapment defense is high-
ly factual in nature, we review the facts in
detail." *State v. Wright*, 744 P.2d 315, 316
(Utah App.1987). In February 1991, Lane
Hall contacted Leo Lucey, his parole super-
visor. Lucey was an adult probation and
parole (AP & P) officer in Davis County.
While on parole, Hall, who had a history of
heroin addiction, had been charged with
two third degree felonies, possession of a
controlled substance with intent to distrib-
ute and possessing a controlled substance
without affixing the appropriate stamp.
He had contacted Lucey to ascertain
whether AP & P would assist him in avoid-
ing parole revocation in exchange for infor-
mation about other narcotics activities.

Lucey arranged a meeting between Hall
and the Davis County drug strike force.
Because Davis County detectives deter-
mined that Hall's information could prove
valuable, they entered into an agreement
with him. The agreement provided that
Hall would disclose names of drug traffick-
ers in exchange for a diversion agreement
with the Davis County Attorney's office,

whereby the pending charges against Hall would either be reduced or dismissed. As part of the agreement, a Board of Pardons warrant was held in abeyance, and AP & P placed Hall in a residential drug and alcohol treatment program. Hall agreed to "set up" three individuals, all of whom resided in Salt Lake County. Defendant was not one of the three persons initially targeted.

On March 16 or 17, 1991, Hall was introduced to defendant by Linda S., a friend of defendant's wife. Hall went to defendant's home, and at Linda's suggestion, defendant and his wife left to obtain heroin for the four of them to share. When defendant and his wife returned, all four consumed the heroin.

Subsequently, on March 19, 1991, Hall telephoned defendant and asked him if he could buy more heroin. When defendant agreed to the sale, Hall proceeded to defendant's house. After Hall arrived, defendant left the residence in Hall's car, and returned a short time later with heroin. Hall left defendant's house and gave the heroin to detectives who were waiting nearby. The detectives had searched Hall and his car both prior to and after the purchase. This same procedure was used to purchase heroin on March 20 and March 21, 1991.

At defendant's entrapment defense hearing, Hall admitted that absent the benefits he received from the agreement with the Davis County Attorney's office, he would not have involved persons other than the three initially targeted during the agreement negotiations. Hall also testified that he received the benefits promised to him under the agreement. After hearing the testimony, however, the trial court ruled that the government's actions in using Hall as an informant did not constitute misconduct. The court found the relationship between Hall and defendant did not rise to the level of entrapment and denied the motion to dismiss.

1. In *Casias,* the court specified a clearly erroneous standard of review where conflicting evidence is presented, necessitating an assessment of witness credibility. *Casias* did not address,

## ANALYSIS

The sole issue on appeal is whether the manner in which the government used Hall as an informant entitles defendant to a dismissal based on entrapment. Worded differently, does the propriety of governmental conduct with third parties constitute a factor in defendant's own entrapment defense? While a trial court's findings of fact on a claim of entrapment will be reversed on appeal only if clearly erroneous, *see State v. Casias,* 567 P.2d 1097, 1099 (Utah 1977),[1] in this case, we consider the trial court's application of a Utah Supreme Court decision construing the entrapment statute. Statutory interpretation by a trial court presents a question of law, which we review for correctness. *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990). Similarly, we consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness.

Utah's entrapment defense is codified in Utah Code Annotated section 76–2–303(1) (1990) and provides as follows:

> Entrapment occurs when a law enforcement officer or a person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Defendant concedes that the interaction between Hall and himself does not constitute entrapment. He also does not contest any conduct on the part of the government as it directly relates to him. Defendant's entrapment theory instead focuses on the government's conduct as it relates to Hall. Defendant argues that the government violated its rules for using parolees as infor-

as our concurring colleague implies, the standard of review appropriate when applying the applicable law to the facts or determining the ultimate fact of whether entrapment occurred.

mants, and thereby created a situation in which Hall was likely to instigate and encourage the commission of a crime. Specifically, defendant argues that: (1) AP & P violated agency rules when it allowed Hall to engage in heroin use while acting as an informant; (2) the government acted improperly when it used Hall to actively seek out drug distributors rather than merely to provide information upon which undercover agents could act; and (3) AP & P created a situation inducing defendant to engage in drug distribution, instead of interrupting targeted drug dealer activity as they did with the other three persons under investigation.

In support of his argument, defendant cites *State v. Taylor*, 599 P.2d 496 (Utah 1979), in which the supreme court interpreted the entrapment defense statute. *Taylor* held that when the legislature enacted section 76–2–303(1), it adopted an objective standard of entrapment under which "the focus is not on the propensities and predisposition of the specific defendant, but on whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." *Id.* at 500;[2] *but see, Jacobson v. United States*, — U.S. —, —, 112 S.Ct. 1535, 1537, 118 L.Ed.2d 174 (1992) (government failed to establish that defendant was predisposed to commit the crime utilizing a subjective theory of entrapment).

Under the objective standard, the pivotal questions are (1) "does the conduct of the government comport with a fair and honorable administration of justice," *Taylor*, 599 P.2d at 500, and (2) did the governmental conduct create a substantial risk that an average person would be induced to commit the crime defendant committed? *Id.* at 503. Examples of what might constitute improper police conduct are "[e]xtreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money." *Id.* *Taylor* suggests certain factors to consider when evaluating the conduct between the government representative and a defendant. "[T]he transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person." *Id.*

■■■ Notwithstanding *Taylor*, however, defendant asks this court to focus on the governmental conduct in the transactions leading up to the use of Hall as an informant.[3] Defendant argues that the government's conduct in this case was so outrageous that defendant's conviction, resulting from that conduct, should not be allowed to stand.[4] Defendant does not,

---

**2.** *Taylor* did not specify the appropriate standard of review under an objective analysis, but did describe the evidence in detail and state that "[f]rom the testimony adduced by the State, the evidence establishes as a matter of law that Annette Stubbs induced the commission of the offense by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit." *Id.* at 504. Although *Taylor* was an appeal after a jury verdict where erroneous instructions were given, it leaves open the question of the standard of review for an ultimate finding of entrapment under the objective test.

**3.** Defendant also cites case law from Florida, another jurisdiction which adheres to an objective view of entrapment. These cases provide an alternative protection for criminal defendants where governmental conduct is at issue. In *State v. Glosson*, 462 So.2d 1082, 1085 (Fla. 1985), the Florida Supreme Court held that a defendant's due process right under the Florida

Constitution required dismissal of defendant's criminal charges where the State had paid the informant a contingent fee. *See also, State v. Hunter*, 586 So.2d 319, 321 (Fla.1991) (reaffirming the due process analysis and setting out a threshold test for entrapment under the objective view); *Cruz v. State*, 465 So.2d 516, 521 (Fla.1985) ("subjective and objective entrapment doctrines can coexist"), *cert. denied*, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). Defendant offers these cases as additional authority for his argument regarding governmental conduct under the objective view. A due process argument, however, was not presented to either this court or the trial court.

**4.** The trial court stated that it was "not persuaded that there [was] such a perversion of justice by government misconduct here … that utilizing an individual who has contacts with suppliers of illicit drugs necessarily would involve individuals such as Mr. Hall who have those

however, provide any case law which supports his theory under the facts of this case. To the contrary, under Utah law, "the propriety of [governmental action] is measured by its probable effect upon a hypothetical person in the 'setting in which the inducement took place.'" *State v. Wright*, 744 P.2d 315, 318 (Utah App.1987) (quoting *Taylor*, 599 P.2d at 503). Under Utah law, therefore, the statutory entrapment defense is available only if there is impropriety by the government in its contacts with defendant, to the extent that an ordinary person in defendant's situation would be induced to commit a crime.[5] The relationship evaluated in an entrapment defense claim must directly involve the government and the party claiming to be entrapped. The government's conduct in this case did not taint Hall's contact with defendant. Hall knew defendant was involved in illegal drug activity prior to the set up operation with law enforcement because defendant had willingly provided heroin for both Hall's and defendant's use.[6] And, as admitted by defendant, Hall did not employ inducements which would have caused an ordinary person to engage in criminal activity.

Based upon the foregoing, the government's use of Hall as an agent in defendant's apprehension did not constitute entrapment under Utah Code Annotated section 76–2–303(1).

## CONCLUSION

The trial court correctly held that the governmental conduct in this case did not constitute entrapment. We therefore affirm the trial court's denial of defendant's motion to dismiss.

Billings, J., concurs.

BENCH, Presiding Judge (concurring):

I concur in affirming defendant's conviction because he has not shown how the trial court erred in finding that he was not entrapped. I write separately to more fully address our standard of review.

Our standard of review in a given case is not determined by the overall subject matter before us, but by the specific error alleged. Factual questions are reviewed

---

prior contacts and experience, that is, parolees or probationers, and that certainly doesn't offend my sensibilities." The court further noted that although Hall's drug use apparently continued, he did agree to enter a drug treatment program and that agreements of this type were vital for undercover police operations. The trial court's characterization of the governmental conduct as reasonable is persuasive to this court.

5. The concurring opinion states that defendant does not challenge the trial court's interpretation of supreme court opinions, but only challenges the "ultimate factual finding" that entrapment did not occur. We disagree. The underlying facts forming the basis of defendant's appeal are largely undisputed. Defendant seeks on appeal an expansion of *Taylor's* interpretation of the entrapment statute to encompass undisputed facts involving the relationship between Hall and the government. We hold that the expansion sought is inconsistent with both *Taylor* and the statute and, therefore, impermissible. This exercise in no way undermines the authority of the trial court or interferes with its rightful prerogatives. Moreover, under the concurring opinion's view, the facts of this case could result in a ruling by a different trial court that the statutory entrapment defense had been successfully met—that the government's conduct with

third parties can provide a defense under the entrapment statute. By the concurring opinion's use of an abuse of discretion standard, that ruling would be virtually unassailable on review by an appellate court.

Our colleague, however, has seized upon the opportunity to again particularize differences of opinion among members of this court regarding applicable standards of review. While we do not agree that this case is an appropriate vehicle, we reiterate that the dispute "[s]hould be definitively determined by the Utah Supreme Court in order to put to rest the conflicts between panels of this court and alleviate the confusing state of the law on these continually recurring issues." *State v. Carter*, 812 P.2d 460, 468–69 n. 8 (Utah App.1991), *cert. denied*, 836 P.2d 1383 (Utah 1992); *see also State v. Sykes*, 840 P.2d 825 (Utah App.1992) (Greenwood opting for bifurcated test of reasonable suspicion; Jackson concurring opinion rejecting same; Bench dissenting).

6. Although defendant expresses outrage at the arrangement with Hall in this case, there is nothing before us to suggest that the way in which AP & P and the Davis County drug strike force investigated drug dealing was outside the bounds of acceptable drug investigation protocol.

under the clearly erroneous standard which requires great deference to the trial court's findings. *State v. Walker,* 743 P.2d 191, 192 (Utah 1987). Legal questions, on the other hand, are reviewed under a correction-of-error standard which does not require any deference to the trial court's conclusions. *State v. Mitchell,* 779 P.2d 1116, 1123 (Utah 1989).

The main opinion in this case correctly cites *State v. Casias,* 567 P.2d 1097, 1099 (Utah 1977), for the proposition that a trial court's findings regarding entrapment are reviewable under the clearly erroneous standard of review. By designating the clearly erroneous standard as the applicable standard, the supreme court acknowledged in *Casias* that the question of entrapment is factual in nature. The starting point for our review, therefore, is the clearly erroneous standard.

The main opinion, however, then proceeds to muddy the water. It indicates that we review statutory construction by the trial court under a correction-of-error standard. Inasmuch as defendant has not challenged the trial court's interpretation of the entrapment statute, the statutory construction standard does not apply. The main opinion also indicates that we review the trial court's interpretation of an applicable supreme court opinion under the correction-of-error standard. But defendant has not challenged the trial court's interpretation of any supreme court opinion. Once again, the standard recited by the main opinion is not helpful in this case and is therefore mere surplusage.

Defendant does, however, challenge the trial court's ultimate factual finding that the police conduct was not entrapment. In order to address this issue properly, we must look at the trial court's application of the statute and the caselaw to the facts of this case. In other words, we are asked to review the trial court's judgment as to whether the facts, under the applicable law, constituted entrapment.

While the main opinion acknowledges that we are looking at the trial court's application of the law to the facts, it never states our standard for reviewing such action.[1] It seems to imply, however, that we are applying a correction-of-error standard of review. We are not. Any suggestion that we should review the trial court's decision in this case under a correction-of-error standard is not supported by Utah law, and improperly circumvents the supreme court's designation of the clearly erroneous standard as the proper standard. I write separately to clarify what I believe to be the proper standard or review of a trial court's application of the law to the basic facts in reaching its finding of ultimate fact.

## Ultimate Facts

Every case heard by a trial court necessarily involves the finding of facts, the identification and interpretation of the governing law, and the application of the law to the facts to reach the ultimate result. It is the application of the law to the facts that seems to be creating so much confusion in our standard of review. Given the fundamental and ever present nature of this relationship between the law and the facts, it should not be so confusing.

The confusion seems to arise most often when the governing law in a given case affects the factfinder's discretion in reaching its ultimate factual findings. The analytical relationship between the governing law and the underlying facts in such cases was precisely set forth in a concurring opinion in *Hess v. Robinson,* 109 Utah 60, 163 P.2d 510 (1945). In *Hess,* Justice Wolfe explained that legal principles often serve as "guides" to the factfinder. *Id.* 163 P.2d at 514. When a legal principle guides the factfinder, the factfinder's task differs from the finding of a basic or historical fact because "[t]he field of inquiry has limits defined, or capable of definition, by

1. It is not enough to simply rehearse the differing standards for factual and legal questions as the main opinion does in this case. Each issue raised must be explicitly characterized as either a factual challenge or a legal challenge so it is clear which standard is being applied and why. Rule 24(5) of the Utah Rules of Appellate Procedure requires the parties to brief "the standard of review for each issue." We cannot be expected to do less in our opinions.

legal principle and judicial discussion." *Id.* at 515 (quoting Pollock on Torts, 10th Ed. pg 462–63).[2] In other words, the factfinder is not allowed to wander about picking just any old fact it finds persuasive or conclusive; rather, the factfinder must remain within a specific field of inquiry defined by the law and consider specific factual issues required by law to be considered.[3]

An appellant may raise two distinct claims of legal error when challenging a finding of ultimate fact. First, the appellant may claim that the trial court, in its role as lawgiver, has improperly established the field of inquiry by incorrectly identifying and interpreting the law. Second, the appellant may claim that the trial court, in its role as factfinder, has ventured from the proper field of inquiry and therefore reached a factual finding that is impermissible as a matter of law. Both of these errors are "legal" errors because legal principles have been violated. When they are alleged, we utilize the correction-of-error standard of review.

If, on the other hand, the trial court has not erred as the lawgiver, nor ventured astray as the factfinder, and therefore has not erred as a matter of law, we must defer to its finding of ultimate fact by applying the clearly erroneous standard just as we would defer to any subordinate factual determination. The American Bar Association's Commission on Standards of Judicial Administration has recommended that a trial court's application of the law to the facts should be given the same deference by appellate courts as the trial court's findings of historical facts. Standard 3.11 provides that

> an appellate court should determine whether the court below relied on properly applicable and correctly interpreted rules of law, ... and rested its determination on factual conclusions reasonably supported by the evidence.... Recognition should be given to the trial court's opportunity to ... apply general legal standards to the particular circumstances at issue.

*Standards Relating to Appellate Courts,* 1977 A.B.A. Comm'n on Standards of Judicial Admin. 19 (see also Commentary thereto).

The supreme court followed this approach in *State v. Udell,* 728 P.2d 131 (Utah 1986), wherein it indicated that the question of entrapment is a factual question and is therefore reviewed under the clearly erroneous standard, *unless* the defendant can show that the trial court made a legal error in its ruling.

> In light of the transactions leading up to the offense, the interaction between the officer and the defendant, and the responses to the officer's inducements, we hold that the government's conduct was not improper *as a matter of law....* We hold that the evidence, when viewed in a light most favorable to the jury verdict, does not *as a matter of law* leave a reasonable doubt that defendant was "not otherwise ready to commit" the offense. Thus, the question of entrapment was properly left to the jury.

*Id.* at 133 (emphasis added).

The supreme court makes it clear in the foregoing language that the question of

---

**2.** A similar analysis applies when the question is whether the trial court has abused its judicial discretion. In *Tolman v. Salt Lake County Attorney,* 818 P.2d 23 (Utah App.1991), we recognized that a trial court's discretion is like an arena within which it may freely operate as it deems best. Its borders are established by the law. So long as the trial court remains within the arena defined by law, we defer to its judgment. But, if the trial court steps out of the arena, it is "exceeding" or "abusing" its discretion as a matter of law, and we will correct its error. *Id.* at 26–27.

**3.** An example may be helpful in understanding this concept. When a factfinder must determine whether a person has committed a crime, it is not allowed to decide arbitrarily what constitutes the offense. Rather, the factfinder must consider the elements of the crime as defined by the law. Furthermore, the factfinder is not allowed to base its decision on irrelevant factors such as the defendant's race, religion, prior bad acts, etc. The law therefore creates a field of inquiry within which the factfinder must function. The ultimate factual finding that the defendant did, or did not, commit the crime charged is a factual determination, "guided" by the law. To such findings we defer, so long as the factfinder remained within a properly defined field of inquiry.

entrapment was factual and within the factfinding discretion of the jury because no legal principles removed the question from the jury's consideration "as a matter of law." Similarly, in the present case, there are no legal principles identified that remove the factual question of entrapment from the discretion of the trial court. We are therefore reviewing the trial court's exercise of its factfinding discretion.

The main opinion correctly rehearses several legal principles found in *State v. Taylor*, 599 P.2d 496 (Utah 1979), that must "guide" the finding of whether defendant was entrapped. In general, police conduct should not fall "below standards, to which common feelings respond, for the proper use of governmental power." *Id.* at 500. The "definitive standard" in making this decision is: "[D]oes the conduct of the government comport with a fair and honorable administration of justice?" *Id.* In making this determination, the trial court must consider whether the police "induced the defendant to commit [the] offense by persuasion or inducement which would be effective to persuade an average person, other than one who was merely given the opportunity to commit the offense." *Id.* at 503. In making such a finding, "the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person." *Id.* These legal principles shape the field of inquiry within which the trial court may properly and fully exercise its own judgment in making its ultimate finding of entrapment.

As is readily apparent, the legal principles set forth in *Taylor* are not absolute. They contain flexible terms such as "common feelings," "proper use," "fair and honorable," "average person," and "normal person." The flexibility of such legal terms creates a very flexible field of inquiry in this case. As Justice Wolfe observed, findings made within a flexible field of inquiry are still factual despite the guiding legal principles.

> [The factfinder must] use its common experience in life to put content into the [legal] terms.... In so doing, I do not think it is actually determining or enunciating the law. It rather applies the test which the [law gives and] determines as a *matter of fact* [the ultimate question].

*Hess*, 163 P.2d at 514. *See also Hamby v. Jacobson*, 769 P.2d 273, 278 (Utah App. 1989) (ascertaining the best interests of a child, the ultimate factual conclusion in a custody case, is a factual, not a legal, determination).

The trial court's findings in this case are clearly within the field of inquiry set forth in *Taylor*. The trial court therefore was acting within its discretion when it applied the law to the subordinate facts to reach its finding of no entrapment. Whether or not this court agrees with that discretionary finding is immaterial. When the guiding legal principles are flexible, two different factfinders applying the same legal principles to the same basic facts could conceivably disagree in their ultimate findings. *Hess*, 163 P.2d at 514. A clear example of this point is when the ultimate finding of fact requires a determination of whether certain conduct was reasonable. Even though two different factfinders might agree as to what actually occurred, they could still rationally disagree on whether the conduct was reasonable.[4] This is to be expected because of their differing life experiences. *Id.*

Thus, whenever a finding involving a flexible term is debatable, the factfinder has the duty to decide the controversy as a matter of fact. It is the resolution of conflicting evidence and inferences as a matter of fact that demands deference to the trial court's judgment. In this case, the trial court, applying its own life experiences, found that there was no entrapment. The trial court made the following finding which adequately reflects its recognition and compliance with the governing law and

---

4. In the negligence setting, for example, whether a person acted reasonably is a question of fact unless "fixed by law" by legislation or prior judicial decision. *Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 825–26 (Utah App.1989) *cert. denied*, 789 P.2d 33 (1990).

shows that, as the factfinder, it simply was not persuaded by defendant's claims.

The Taylor case[,] which seems to be the seminal case in terms of evaluation [of] when entrapment occurs, in rather broad strokes indicates that this Court must examine the conduct revealed in the particular case to see if it falls below the standards to which the common feelings respond for the proper use of governmental power, that is, did the State employ methods creating substantial risk that someone not otherwise ready to commit the crime did so? In other words, was this a perversion of justice by government misconduct?

*I'm not persuaded it was.* It seems to me the evidence has failed to establish that Mr. Richardson was an unwitting, wholly uninvolved individual who would not have otherwise committed the crimes with which he is charged.

(Emphasis added.)

The defendant's appeal in this case is nothing more than an assertion that the trial court made the wrong finding. In this sense, defendant is merely seeking to reopen the debate that occurred at the trial level. It is understandable that defendant wants to reopen the debate since he lost below, but that is not a sufficient ground for us to revisit the issue. Absent a showing that the trial court erred as a matter of law, the question of entrapment is left to the trial court's factfinding discretion, and we must defer to its judgment unless its decision is clearly erroneous.

### Substitution of Judgment

The fact that an appellate court might have decided a case differently than a trial court does not mean that the trial court's findings are not acceptable. Logically, if a finding is fairly debatable, there is no such thing as a "correct" finding. A correction-of-error standard would therefore be wholly inappropriate. In such cases, if the appellate court merely disagrees with the trial court *as a matter of judgment,* it nevertheless must defer to the trial court. *State v. Howard,* 544 P.2d 466, 468 (Utah 1975);

*Pitcher v. Lauritzen,* 18 Utah 2d 368, 371, 423 P.2d 491, 493 (1967).

Despite the mandate that we defer to all factual findings, some of my colleagues seem willing to defer to the trial court only on questions of subordinate historical facts. They feel free to substitute their own judgment on questions of ultimate fact. Our supreme court has not recognized any distinction between a trial court's subordinate factual findings and its findings of ultimate fact for purposes of appellate review. *See, e.g., Pearson v. Pearson,* 561 P.2d 1080 (Utah 1977). We should therefore be as deferential to a trial court's ultimate findings of fact as we are to its subordinate factual findings. *See Hamby,* 769 P.2d at 278–79 ("Determination of the child's best interests is the ultimate factual conclusion in a custody case.... Traditional appellate principles afford the trial judge great deference in making [such] factual determinations.... We now examine the trial court's ultimate finding ... under a clearly erroneous standard...."); *Frandsen v. Holladay,* 739 P.2d 1111, 1113 (Utah App. 1987) (court could not say that the ultimate finding was "clearly erroneous") (citing Utah R.Civ.P. 52(a)).

The suggestion that we may review a trial court's finding of ultimate fact under a correction-of-error standard creates a risk that we, as an appellate court, will not give due deference to the trial court's efforts and advantaged position to hear the evidence. We simply cannot redetermine the ultimate facts by reading selected portions of a cold record on appeal with the same insights gained by the trial court at trial. To attempt to do so is nothing more than a short-sighted substitution of our judgment for the trial court's judgment. This is not fair to the parties and it demeans the efforts and position of the trial judge. *See Standards Relating to Appellate Courts,* 1977 A.B.A. Comm'n on Standards of Judicial Administration 20 ("To the extent an appellate court supersedes the trial court in ... the application of law to fact, it undermines the authority of the tribunals....").

It has been argued that appellate courts are the common denominator between the

varied decisions by the many trial courts in this state and that we, as an appellate court, must be able to substitute our judgment for that of the trial court in order to create consistency between various cases. *See State v. Vigil*, 815 P.2d 1296, 1300 (Utah App.1991). In my view, however, the common denominator between cases is the governing law and the field of inquiry created by it. If the law is being disparately applied to various factual scenarios so as to create the risk of injustice, then the field of inquiry should be restricted by adjusting the governing law. We should reverse a finding of ultimate fact only if we are willing and able to restrict the factfinder's discretion uniformly, as a matter of law, in all similar circumstances. To merely substitute our judgment in a given case accomplishes nothing more than to aggravate the inconsistency and to increase the potential for injustice in other cases.

The apparent willingness by some appellate judges to second guess a trial court's finding of ultimate fact also invites an onslaught of "judgment call" appeals. Parties who have lost a close case at trial will have nothing to lose, and everything to gain, by seeking review at the appellate level. Not only is this unfair to the party prevailing below, it is unfair to others seeking appeals. By increasing our caseload with close "judgment call" cases, we necessarily delay consideration of other important cases. In my view, this court must be more disciplined in its standard of review analysis and resist the temptation to second guess the trial court's decisions by asserting that we, in our wisdom, may review the trial court's findings of ultimate fact under a correction-of-error standard. Otherwise, we are inviting an onslaught of questionable appeals.

It is not our task in this appeal to revisit the evidence and to redetermine whether there was entrapment. The trial court has already performed that task. Our inquiry is simply whether, in light of the governing law, the trial court's finding of no entrapment is permissible. I believe it is.[5]

### Conclusion

Defendant has not shown that the trial court has committed any legal error. He has not challenged the trial court's identification or interpretation of the governing law. Nor has he challenged any of the trial court's subordinate facts. Defendant does not claim that the trial court's application of the law to the facts is unreasonable or irrational. All that remains is defendant's disagreement with the trial court's considered judgment that the facts, when viewed in light of the governing law, do not constitute entrapment. To this factual judgment we must defer.

---

5. The main opinion overstates the scope of our review by concluding that "[t]he trial court *correctly* held that the government conduct in this case did not constitute entrapment." (Emphasis added.) Inasmuch as our sole duty is to determine whether the trial court's finding was permissible, not whether it was "correct," our conclusion should be: "Since the trial court was not required to find that the use of Hall constituted entrapment as a matter of law, it was permissible for the trial court to find that there was no entrapment in this case. We therefore do not disturb its ruling." Anything more is an unwarranted and unjustifiable intrusion into the province of the trial court.